Mary BECK, et al., Plaintiffs,

v.

The BOEING COMPANY,
et al., Defendants.

No. C00–301P.

United States District Court,
W.D. Washington,
at Seattle.

Oct. 19, 2001.

Michael David Helgren, Jerry R. McNaul, Ann Marie Schwartz, McNaul, Ebel, Nawrot, Helgren & Vance, Seattle, WA, Steven J. Toll, Joseph M. Sellers, Christine E. Webber, Cohen Milstein Hausfeld & Toll, PLLC, Seattle, WA, for plaintiffs.

Jeffrey Alan Hollingsworth, Nancy Williams, Seattle, WA, Lawrence B. Hannah, Bellevue, WA, Barbara Berish Brown, Jon A. Geier, Paul, Hastings, Janofsky & Walker, Washington, DC, Dennis C. Donnelly, Veronica Gioia, St. Louis, MO, James Steven Massoni, Trisha A. Thelen, Mary Kathleen Babcock, Vaughn Burkholder, Jeff P. Degraffenreid, Foulston & Siefkin LLP, Wichita, KS, C. Geoffrey Weirich, Maureen E. O'Neill, Paul Hastings Janofsky & Walker, Atlanta, GA, for defendants.

## ORDER ON MOTION FOR CLASS CERTIFICATION

PECHMAN, District Judge.

The above-entitled Court, having received and reviewed

1. Plaintiffs' Memorandum in Support of Class Certification Motion

2. Defendants' Memorandum in Opposition to Plaintiffs' Motion for Class Certification

3. Reply by Plaintiffs to Response to Motion to Certify Class

4. Plaintiffs' Response to the Court's Order for Additional Briefing on Issues Related to Class Certification

5. Defendants' Supplemental Memorandum on Class Certification Issues

6. Defendants' Objections to Plaintiffs' Improper Supplementation of the Record

7. Plaintiffs' Response to Defendants' Objections to Plaintiffs' Improper Supplementation of the Record

and all accompanying declarations and exhibits, makes the following ruling:

IT IS HEREBY ORDERED that plaintiffs' motion is GRANTED IN PART; a class will be certified in this matter as follows:

A class of women employed at defendants' facilities in the Puget Sound area of the State of Washington at any time since February 25, 1997 seeking punitive damages for gender discrimination in compensation and overtime and injunctive relief for gender discrimination in compensation and promotion. The class will be broken into subclasses as follows:

    a. All non-executive, salaried women employees (excluding SPEEA engineers) in defendants' facilities in the Puget Sound area of the State of Washington.

    b. All hourly women employees covered by collective bargaining agreements with the IAM union in defendants' facilities in the Puget Sound area of the State of Washington.

IT IS FURTHER ORDERED that the trial of the class action litigation will be conducted in two phases before a single jury:

1. **Phase I**: the class in Phase I will be certified under FRCP Rule 23(b)(2) and Phase I of the trial will address the issue of defendants' liability under the causes of action propounded by the class and any declaratory or injunctive relief appropriate thereto;

2. **Phase II**: should liability be found, the class in Phase II will be certified under FRCP 23(b)(3) and Phase II of the trial will concern the issue of punitive damages arising from that liability.

IT IS FURTHER ORDERED that defendants' objection to plaintiffs' supplementation of the record is OVERRULED.

## 1. STATEMENT OF THE CASE

Plaintiffs filed this action on February 25, 2000, alleging gender-based employment discrimination claims against The Boeing Company and its subsidiaries and divisions. The suit, filed on behalf of female employees of

the defendants at their facilities in the Puget Sound area, Wichita, Tulsa, Southern California and St. Louis, alleges violations of the Fair Labor Standards Act, 29 U.S.C. § 216(b); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(f)(3); and the Civil Rights Act of 1991, 28 U.S.C. § 1331 and 28 U.S.C. § 1343(4). The plaintiffs, and the class they seek to represent, claim to "have been denied, based on their gender, desirable job assignments, promotional opportunities, management positions, training, equal pay, overtime, tenure, comparable retention ratings, bonuses and other benefits and conditions of employment." Second Amended Class Action Complaint, ¶ 3.

Plaintiffs moved this Court to certify a class and sub-classes as follows:

A class of women employed at any time since February 25, 1997 seeking back pay and punitive damages for gender discrimination in compensation and injunctive relief for gender discrimination in compensation and promotion. The class would be broken into subclasses as follows:

a. All non-executive, salaried women employees (excluding SPEEA engineers) in Puget Sound, Wichita, St. Louis, and Long Beach.

b. All hourly women employees covered by collective bargaining agreements with the IAM union in Puget Sound, Wichita, and St. Louis.

Plaintiff's Memorandum in Support of Class Certification Motion (hereinafter "Plaintiff's Memo"), p. 3. In their complaint, plaintiffs seek back pay, punitive damages and injunctive relief. For Subclass (a), the claims concern discrimination in the areas of compensation and promotion; for Subclass (b), the category of overtime is added as a third area in which plaintiffs allege discriminatory treatment. In addition to the class claims, 132 women who are employees and former employees of Boeing have filed a "collective action" for claims under the Equal Pay Act, 29 U.S.C. § 206(d).

Plaintiffs' complaint reflects a liability theory based on a pattern and practice of discrimination; i.e., disparate treatment. They produce statistical records, much of it compiled by Boeing or at Boeing's request, in support of their position that gender discrimination was system-wide across geographic, hierarchic, and salary lines. While plaintiffs' experts attribute much of the allegedly pervasive discriminatory activity to managers and supervisors who were permitted "excess subjectivity" in job decisions without adequate oversight, the thrust of plaintiffs' case is aimed at the upper echelon of the corporation. Plaintiffs' allegations in this regard are twofold:

1. Boeing personnel policies were centrally created and centrally administered; and

2. Boeing was aware of the gender-based disparities in salary, promotions and overtime and did not adequately address what their own evidence showed to be a systemic gender-discrimination problem.

Defendants have filed their opposition to plaintiffs' request for certification, and have additionally moved to exclude expert evidence and portions of the declarations and memorandum proffered by plaintiffs, as well as some supplementary documentation submitted in response to a call for additional briefing by the Court. The Court has previously ruled on the motions to exclude expert testimony and strike portions of the declarations and memorandum. The motion to exclude supplemental documentation will be addressed below.

## II. DISCUSSION

### A. Evidentiary Matters

Following the completion of briefing on the request for certification of the class, the Court did not issue a ruling on that request. Instead, the Court issued an Order for Additional Briefing on Issues Related to Class Certification, outlining some questions of law which needed to be addressed before an order could be finalized; primarily, whether plaintiffs had established standing to sue under Title VII, and whether and to what extent individualized, fact-specific hearings would be required by plaintiffs' allegations and requests for relief. Both parties responded by the deadline set by the Court; plaintiffs supplemented their briefing with a

large volume of additional materials, the most significant of which concerned proof that plaintiffs had adhered to the procedural prerequisites for filing their Title VII claims.

Defendants filed "Objections to Plaintiffs' Improper Supplementation of the Record," arguing that the Court had invited additional *briefing,* not additional evidence, and that plaintiffs were limited to the state of the record as it existed at the close of regular briefing on the certification issue. Plaintiffs responded that they had not submitted the material initially because the record demonstrated that defendants had never disputed whether plaintiffs had cleared the procedural hurdles to filing their Title VII claims. In a case already groaning under the weight of the filings, plaintiffs did not see the need to submit further proof on an issue they believed was not in controversy.

The Court finds plaintiffs' explanation of the omission persuasive and is satisfied that defendants had evidence of and conceded that an adequate procedural foundation had been laid to permit plaintiffs to go forward with their Title VII claims. Accordingly, defendants' objections will be overruled and the supplemental material admitted.

## B. Standing

### 1. Statute of Limitations

■ Ordinarily, the statute of limitations on Title VII claims is based on the fact that Title VII requires a plaintiff to file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the complained-of conduct. *See 42 U.S.C. § 2000e–5(e).* In a class action matter, the Title VII statute of limitations is calculated from the earliest date that a named plaintiff has filed a charge with the EEOC.

However, in those states where there is a work share agreement between the state agencies and the EEOC (as is the case with these plaintiffs), the statute of limitations extends to 300 days prior to the filing of the earliest administrative charge. *See 42 U.S.C. § 2000e–5(e)(1).* Plaintiffs have alleged that defendants are in agreement that, should a class be certified, the opening date for eligi-

bility for Title VII claims would be March 30, 1999. Defendants have not disputed that statement, and the Court accepts it for purposes of the certification motion.

Plaintiffs have requested that the Court certify a class with an opening date of February 25, 1997, based on the three-year statute of limitations for violations of the Washington Law Against Discrimination ("WLAD"). RCW 49.60. Again, defendants have not disputed this date. Accordingly, the start date for the class's remaining claims will be February 25, 1997.

### 2. Types of Discrimination Suffered by the Named Plaintiffs

In order to certify a class in this matter, the Court is required to find that at least one of the named plaintiffs has suffered the kind of injury that gives rise to the type of discrimination claims advanced in the complaint. *Griffin v. Dugger,* 823 F.2d 1476, 1483 (11th Cir.1987)

With the overruling of defendants' objections to plaintiffs' supplemental materials, the way is cleared for the Court to examine plaintiffs' allegations in light of the claimed violations of state and federal law. The violations fall into several discrete categories: for Subclass (a), they concern discrimination in the areas of salaries and promotions; for Subclass (b), they concern discrimination in the areas of salary, promotions and overtime. The Court finds that there is at least one named plaintiff in every proposed subclass who has alleged an injury giving rise to each of the claims advanced in their complaint.

### C. Requirements of Rule 23(a)

FRCP 23(a) states that four requisite elements must be established prior to the certification of a class action:

1. Numerosity (a class "so numerous that joinder of all members is impracticable")

2. Commonality ("questions of law or fact common to the class")

3. Typicality ("the claims or defenses of the representative parties are typical of the claims of defenses of the class")

4. Adequacy ("the representative parties will fairly and adequately protect the interests of the class")

As stated below, the Court finds that plaintiffs have established those elements sufficiently to qualify a class (consisting of two subclasses), although not the class which plaintiffs came before the Court seeking.

## 1. Numerosity

■ Plaintiffs have alleged, and defendants do not dispute, that their class as proposed could potentially encompass 42,000 members. The class the Court is prepared to certify is not as large as plaintiffs' proposed class, but it is approximately 70% of that number. Under those circumstances, the Court finds that this class is sufficiently large that joinder of all of its members as individual plaintiffs in a single lawsuit would be impracticable. The numerosity requirement is met.

## 2. Commonality and typicality

■ These two requirements of FRCP 23(a), while addressed to group and individual aspects of the class respectively, "tend to merge" into a determination of "whether under the particular circumstances maintenance of a class action is *economical* and whether the named plaintiffs' claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Telephone v. Falcon*, 457 U.S. 147, 157 at n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). (emphasis supplied)

Although a review of class action litigation reveals that the commonality requirement is often easily satisfied, the requirement of commonality can sometimes defeat class certification where trying the proposed class is too widespread and diverse to achieve the efficiencies that the class action suit was created to achieve. *See, e.g., Reid v. Lockheed Martin Aeronautics Co., et al.,* 2001 U.S. Dist. LEXIS 11685. The Court finds in this case that the class as proposed by the plaintiffs does not satisfy the commonality requirement on those grounds. The same analysis reveals defects in typicality, as discussed below.

The sweep of plaintiffs' proposed class is immense—not only across four geographically diverse locations, but a multitude of facilities within those locations; not only across the length and breadth of a mega-corporation, but over a period of time which encompasses the practices of other corporations who were eventually merged into the larger entity; not only across nearly the entire spectrum of job descriptions available to employees, but also across the variety of bargaining units, bargaining agreements and other formal and informal practices to which those employees were subject.

These factors do not, in and of themselves, defeat certification of the class. Classes consisting of multiple facilities and various types of job descriptions have been certified. *See, e.g., Seidel v. General Motors Acceptance Corp.,* 93 F.R.D. 122 (W.D.Wash.1981), *Stastny v. Southern Bell Tel. & Telegraph Co.,* 628 F.2d 267 (4th Cir.1980). But in this case, the Court finds that the plaintiffs have cast their net too wide.

The essence of plaintiffs' claims is one of "disparate treatment," and "in a disparate treatment case proof of discriminatory motive is essential." *Eastland v. TVA,* 704 F.2d 613, 618 (11th Cir.1983). Statistical evidence is the primary device by which class-wide discrimination is established (*Carmichael v. Birmingham Saw Works,* 738 F.2d, 1126 [11th Cir.1984] ) and plaintiffs have produced a large quantity of such evidence in support of their claims as well as experts to analyze the information (Declaration of Wayne Cascio in Support of Plaintiffs Motion for Class Certification, Declaration of Bernard R. Siskin, Ph.D.).

Those statistics are critical to plaintiffs establishing their claims of systemic discrimination based on gender (a necessary prerequisite to establishing common questions of law or fact). They also highlight the problematic nature of attempting to establish such claims on a multi-facility scale. By way of example, the Court examines some of plaintiffs' figures from the categories of promotion and overtime. [All references are to the Conclusions section of the Declaration of

Bernard R. Siskin, Ph.D., submitted in support of plaintiffs' motion.]

At Page 6, ¶ 4(v), it is noted that a preliminary review of the data reveals that

Female hourly employees in Puget Sound, Wichita or St. Louis are statistically significantly less likely to be promoted within hourly overall, in-line or competitively. This pattern is consistently adverse to females in every year in each location (except in 1999 in St. Louis) and it is individually statistically significant in Puget Sound in 1997 and 1998, at Wichita in 1997, 1998 and 1999 and at St. Louis in 1998.

This analysis is important to the Court's ruling in two respects: (1) the absence of any information about promotions at the Long Beach facility and (2) the fact that the individually significant statistics occur at the remaining facilities during different time periods.

At Page 7, ¶ 4(vii), Dr. Siskin notes that "[f]emales in pay categories N or X at the former [McDonnell Douglas] Sites (St. Louis and Long Beach) do not appear to be less likely to be promoted within these pay categories."

At Pages 30–31, Dr. Siskin appends a table of statistics concerning "Female Shortfall" in overtime at the three facilities covered by subclass (b) for the period from 1997 to 2000 for which this class seeks certification. Reviewing this table, it is immediately apparent that at one of the facilities (Local 837, St. Louis) both overtime and "double time" are offered, while at Puget Sound and Wichita, only overtime is available. This information is in keeping with defendants' assertion that "the practices used to assign, monitor and equalize overtime hours, and the documentation of those practices, differ greatly across the three locations." Defendants' Memorandum in Opposition, p. 16.

The dissimilarities across geographic locations represented by these examples calls into question both the existence of commonality and typicality on the scale of litigation envisioned by the plaintiffs. In this case, the Courts finds that the scope of the proposed class defeats the existence of common questions of fact.

Plaintiffs may well claim that, wherever the statistics show significant evidence of disparities in the employment conditions of women, those disparities are the result of discriminatory treatment. But if those statistics do not apply at each and every location covered by the putative class, commonality has not been established. Similarly, where defendants' employment practices yield statistics which are telling for one facility, but are nonexistent in the others (e.g., the "double time" figures from St. Louis), there is no commonality.

Likewise, typicality requires the Court to find that the named plaintiffs "possess the same interest and suffer the same injury as the class members." *Murray v. Auslander*, 244 F.3d 807 (11th Cir.2001). Where plaintiffs' statistical proof of injury applies to certain facilities only in certain years (as in the promotions data cited above) or applies in certain facilities and not at all in other (as in the "double time" figures), it cannot be said that prima facie evidence of typicality has been produced.

These defects of proof are eliminated if the class (and its attendant subclasses) are reduced to a single geographic region. The Court has selected the Puget Sound area as the most appropriate subgroup of the proposed class for certification purposes. It contains the largest percentage of plaintiffs' proposed class. While there are multiple facilities within the Puget Sound area, there does not appear to be the disparity of business practices that defendants have highlighted in discussing the various facilities around the country.

Further, the data yields statistically significant results of adverse impacts on female employees in every facility and at every level within the Puget Sound area. This establishes sufficient indicia of class-wide disparate treatment to satisfy the certification criteria of commonality and typicality. Finally, as the only geographic region within the State of Washington, it would appear the most appropriate to qualify for protection under the Washington Law Against Discrimination.

### 3. Adequacy

The final criterion under FRCP 23(a) involves two elements: first, whether counsel for plaintiffs are "qualified, experienced, and generally able to conduct the proposed litigation," *Griffin v. Carlin,* 755 F.2d 1516, 1533 (11th Cir.1985); and second, an absence of "antagonism" and a sharing of interests between the representatives and the unnamed members of the class. *Walters v. Reno,* 145 F.3d 1032, 1046 (9th Cir.1998). There has been no argument by defendants that plaintiffs' counsel are in any fashion unqualified for the task which they are undertaking.

■ As regards the second element, defendants have asserted inadequacy on the grounds that the choice of the named plaintiffs not to seek back pay, individualized equitable remedies or punitive damages in promotion claims has "significantly undercut their ability to serve as adequate class representatives." Defendants' Memorandum in Opposition, p. 29. Their argument is that, were the class to be certified under Rule 23(b)(2) without any opt-out rights, the *res judicata* effect of the lawsuit would preclude absent class members from recovering these particular remedies at a later date.

The argument is not persuasive. As discussed in detail below, certification of the liability portion of the class action suit under Rule 23(b)(2) does not prevent the Court from requiring notice and opt-out provisions for other phases of the litigation. Additionally, certification under Rule 23(b)(2) requires a finding by the Court that the predominant relief sought is equitable; i.e., injunctive. Such a finding must and will be premised upon the Court's considered opinion that the members of this class, named and unnamed, would ultimately rather have defendants enjoined from further conduct of the type of which they complain than be compensated for the damage from any prior injurious conduct. That is the very definition of whether the injunctive relief sought is the "predominant relief."

### D. The Requirements of Rule 23(b)

In addition to satisfying the four prerequisites of Rule 23(a), a class seeking certification must also qualify under one or more sections of Rule 23(b). Plaintiffs seek certification under Rules 23(b)(2) and/or Rule 23(b)(3). Certification under more than one section of this rule has been permitted in this jurisdiction previously. *See Mortimore v. F.D.I.C.,* 197 F.R.D. 432, 438 (W.D.Wash. 2000). The Court is approving the certification of the above-described class under both (b)(2) and (b)(3).

### 1. Rule 23(b)(2)

■ This provision of the rule allows the maintenance of a class action where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." FRCP 23(b)(2). Analysis of requests for certification under this provision have become more complicated with the passage of the 1991 Civil Rights Act, permitting the awarding of compensatory and punitive damages in Title VII actions. Although the Ninth Circuit has yet to address the impact of the 1991 Act, this jurisdiction has previously ruled that "[c]lass actions certified under Rule 23(b)(2) are not limited to actions requesting only injunctive or declaratory relief..." *Probe v. State Teachers' Retirement System,* 780 F.2d 776, 780 (9th Cir.1986).

Other jurisdictions have explored the intersection between equitable and monetary relief in the context of 23(b)(2). *Murray, supra; Allison v. Citgo Petrol. Corp.,* 151 F.3d 402 (5th Cir.1998); *Jefferson v. Ingersoll Int'l, Inc.,* 195 F.3d 894 (7th Cir.1999). While the results have not been consistent, the path of inquiry has always been the same, a variation of the question of whether "the predominant relief sought is injunctive and declaratory." *Murray,* 244 F.3d at 812. If that question can be answered in the affirmative, there is general agreement that the class action may suitably be certified under 23(b)(2).

Defendants argue that the question cannot be answered in the affirmative in this case. They argue that the potential size of the class and the concomitant possibility of massive punitive damages render the request for

any monetary award much more than "incidental" or "secondary." They further argue that punitive damages cannot be awarded without an endless litany of fact-specific inquiries into the circumstances of each individual class member, thus defeating the efficiencies which the class action mechanism was intended to create.

Defendants do not cite to any precedent in support of the position that the predominance of one form of relief over the other is measured by the amount of monetary damages which could conceivably result from a judgment in favor of plaintiffs. Nor is this an argument which appeals to logic. This Court prefers to take the term "predominant" at face value and inquire whether, in light of all the evidence (statistical and anecdotal) received and the arguments advanced, the plaintiffs would have brought suit to obtain the injunctive relief which they seek even if they could not obtain a monetary recovery. See Robinson v. Metro North Commuter R.R.Co., 267 F.3d 147 (2d Cir. 2001). In the case before the Court, the answer to that question is "undoubtedly yes."

Nor do we find that certifying a class in this matter need result in a parade of countless individual plaintiffs explaining the circumstances of their complaints. Plaintiffs' theory of the case is premised on their ability to prove that, at the highest levels of the corporation, Boeing knew that systemic gender-based discrimination was occurring and did nothing (or did not do enough) to put an end to it. Liability will hinge on that proof and the punitive damages assessed against defendants (if any) will flow from that finding. There is nothing about plaintiffs' request for punitive damages which disqualifies their case from certification under 23(b)(2).

Finally, defendants seek to defeat (b)(2) certification by arguing that the unavailability of notice and opt-out provisions in this portion of Rule 23(b) will work an injustice to absent class members who wish to pursue their own remedies against defendants. As discussed in greater detail below, the Court has the power to fashion orders and selectively certify portions of the case in such a manner as to afford the maximum amount of

due process and achieve the goals of equity and efficiency for which the class action mechanism was created.

The Court chooses to accomplish this by certifying the liability phase of the class action litigation pursuant to Rule 23(b)(2). To the extent that notice and opt-out provisions are appropriate in this litigation, they will be provided via the Court's discretionary powers and a separate certification of the damages phase of the trial under Rule 23(b)(3).

## 2. Rule 23(b)(3)

The Court may also certify a class where it finds "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FRCP 23(b)(3). We find that the class as defined does qualify for certification under this provision.

The rule itself provides the elements for the analysis under 23(b)(3):

The elements pertinent to the findings include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) the difficulties likely to be encountered in the management of a class action.

Regarding the first element, it is the opinion of the Court that the interest of the class members in controlling the prosecution of separate actions is minimal—contrary to defendants' arguments, these are in fact just the kind of "negative value" individual lawsuits which these plaintiffs (many of whom are of limited means) would be unable to pursue on their own; i.e., the cost of prosecuting them would likely exceed the potential income to any prospective attorney. While

the "possibility" of substantial recovery of punitive damages is not disputed, the Court cannot ignore the realities of choosing to litigate an individual claim against a resource-heavy organization such as defendants'. It is the opinion of this Court that most of these women would not pursue their claims individually, and thus have little or no interest in "controlling the prosecution... of separate actions."

Plaintiffs maintain (and defendants do not assert otherwise) that no other gender discrimination litigation is pending (Plaintiffs' Memorandum, p. 31), thus satisfying the second element of this provision. Having chosen to limit the class to Puget Sound area female employees, "the desirability... of concentrating the litigation of the claims in this particular forum" is self-evident.

The Court combines its discussion of the final element in the (b)(3) analysis ("the difficulties likely to be encountered in the management of a class action") with the second consideration of the provision itself: the finding of whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Defendants' position is that the "...damages assessments in pattern and practice employment discrimination cases necessarily involve predominantly *individual*, rather than predominantly *classwide*, issues of law and fact." (Defendant's Memorandum in Opposition, pp. 32–33; emphasis in original). If true, it would be render a class action lawsuit cumbersome and time-consuming, achieving just the opposite of what this procedure was intended to accomplish.

The spectre of "individualized hearings" raises its head in two ways in the context of this litigation. First, by the possibility of a defense rebuttal to a presumption of discriminatory intent pursuant to the Supreme Court's reasoning in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396, (1977), wherein a defendant's ability to bring forth evidence showing non-discriminatory reasons for its actions is discussed. Second, by the possibility of demonstrating the defendant's conduct in specific instances in pursuit of either back pay or individual punitive dam-

ages. *See, e.g., Smith v. Texaco*, 263 F.3d 394 (5th Cir.2001).

The Ninth Circuit has already ruled that such "individualized hearings" are not required in all Title VII class actions. The Court may, in order to avoid a "quagmire of hypothetical judgments" or the strain of a multitude of separate fact-finding hearings, use a class-wide formula for a determination of damages. *See, e.g., Kraszewski v. State Farm Gen. Ins. Co.*, 41 F.E.P. Cas. 1088, 1986 WL 11746 (N.D.Cal.1986). The Court endorses the reasoning of *Segar v. Smith*, 738 F.2d 1249 (D.C.Cir.1984):

> Later courts have often faced situations in which the *Teamsters* [individualized] hearing preference had to bend to accommodate Title VII's remedial purposes. Primarily, courts have not required hearings when discrimination has so percolated through an employment system that may attempt to reconstruct individual employment histories would drag the court into a quagmire of hypothetical judgments. *Id.* at 1289–90.

■ The one aspect of damages to which this rationale does not apply is the request for back pay. The Court is at a loss to fashion a method of arriving at these damages for the plaintiffs and class members without individualized hearings into the specific circumstances of each person's employment and what the discrimination to which they have been subjected (if such is proven) has cost them over the time period allotted to the class. For this portion of the damages request, a class action is not the superior method by which to fairly and economically resolve the issue and that portion of plaintiffs' lawsuit will not be certified as a class action.

■ This Court finds, however, that in fashioning a theory of liability which seeks to hold defendants accountable for the failure of their corporate leadership to respond to evidence of system-wide gender discrimination, plaintiffs have obviated the need for individualized, fact-specific inquiries in order to determine whether and in what amount punitive damages are to be awarded.

Accordingly, the Court finds that a class action is the superior method for conducting the lawsuit as proscribed *infra* and settling the claims presented therein, and the punitive damages phase of the trial will be conducted pursuant to Rule 23(b)(3); i.e., notice requirements and the option of putative class members to opt-out of this phase will be incorporated. Additionally, it is noted that under Rule 23(d)(2), the Court is afforded the power to "make appropriate orders... requiring, for the protection of the members of the class... that notice be given in such manner as the court may direct to some or all of the members of any step in the action..."

It is believed that, in certifying the punitive damages portion of the class action under 23(b)(3) and exercising the discretionary powers of the Court afforded by Rule 23(d)(2), defendants' argument that absent class members may be prejudiced by the unavailability of notice and opt-out provisions in the litigation has been answered.

To summarize, the Court intends to certify a class composed of subclasses (a) and (b) as described by plaintiffs, except limited to Puget Sound area female employees only. As discussed above, the Court will certify the class for the liability phase of the trial under Rule 23(b)(2) and the punitive damage phases under Rule 23(b)(3). The request for damages in the form of back pay will not be certified for class action.

### E. Structure of Trial on Class Action Issues

The Court intends to try the class action issues presented in this litigation in stages before a single jury in the following fashion:

**Phase I**: The liability phase; plaintiffs will introduce statistical evidence and experts to establish their claims of system-wide discrimination; some anecdotal evidence will also be permitted on this issue. If the jury returns a finding of liability, the Court will address the issues of declaratory and injunctive relief at this phase.

**Phase II**: At this phase, the jury will determine the issue of punitive damages on a classwide basis, based on their findings in Phase I and a classwide formula to be determined.

### III. Conclusion

A class, consisting of two subclasses, will be certified as defined above and pursuant to the provisions of Rule 23(b)(2) and 23(b)(3). The case will be tried to a single jury which will hear the evidence and make its determinations regarding liability and damages in two phases.

The parties are ordered to prepare and submit to the Court a joint status report incorporating the class certification order contained herein. This report should also address the parties' plans for trying the Equal Pay Act claims which are also a component of this litigation. The joint status report shall be submitted to the Court no later than Nov. 21, 2001.