Karla CARPENTER, Linda Wilkerson, Sheryl Landon, Sandy Wilcynski, Sonya Phillips, Charlene Chapman, Cheryl Lee Persinger, Nena Holder, and Ruby Ryherd, individually and on behalf of all others similarly situated,

and

Mary Dean, Faith Bridgewater, and Verlene Maholmes, individually, Plaintiffs,

v.

THE BOEING COMPANY, Defendant.

No. 02–1019–WEB.

United States District Court, D. Kansas.

Aug. 11, 2004.

Andrew M. Volk, Ivy D. Arai, Jeffrey T. Sprung, Michael L. Cohen, Steve W. Berman, Hagens Berman, LLP, Seattle, WA, Derek S. Casey, Mark B. Hutton, Hutton & Hutton, Wichita, KS, for Plaintiffs.

Barbara Berish Brown, Paul, Hastings, Janofsky & Walker, LLP, Washington, DC, Boyd A. Byers, Carolyn L. Rumfelt, James M. Armstrong, Mary K. Babcock, Mikel L. Stout, Trisha A. Thelen, Foulston Siefkin LLP, Wichita, KS, C. Geoffrey Weirich, Maureen Ellen O'Neill, Paul, Hastings, Janofsky & Walker, LLP, Atlanta, GA, for Defendant.

## MEMORANDUM AND ORDER

WESLEY E. BROWN, Senior District Judge.

At a hearing on July 28, 2004, the Court announced its decision to certify certain of its orders under Fed.R.Civ.P. 54(b).[1] This order supplements the Court's comments at the hearing. Plaintiffs have also suggested that other class rulings are subject to interlocutory appeal under 28 U.S.C. 1292(b). As stated below, the Court disagrees.

## I. PROCEDURAL BACKGROUND

This case did not begin with a blank slate. In 1999, the Defendant settled allegations of gender discrimination made by the Office of Federal Contractor Compliance Programs (OFCCP). As Plaintiffs have recognized, the OFCCP settlement changed the way Defendant did business. *See* Plaintiffs' Renewed Motion for Class Certification, at 3 (Doc. 375) ("These changes (along with a substantial injection of funds directed exclusively to women and other protected classes ...) began to ameliorate the statistical salary disparities.")

In early 2000, a class action case was filed in the Western District of Washington alleging gender discrimination at Defendant's operations nationwide. *See Beck v. Boeing Co.,* 203 F.R.D. 459 (W.D.Wash.2001). The *Beck* court certified the Defendant's employees in Washington state only, however. Plaintiffs then brought individual and class claims un-

---

**1.** As set out below, the Court had denied Plain- tiffs' earlier motions for Rule 54(b) certification.

der Title VII, the Equal Pay Act, § 301 of the Labor Management Relations Act (LMRA), and state law against Defendant for alleged actions in its Kansas operations. *See* First Amended Class Action Complaint (Doc. 49).

Discovery was conducted in phases, beginning with the class certification issue. *See* Amended Scheduling Order, at 1 n. 1 (Doc. 106). Plaintiffs moved for class certification with three subclasses: 1) non-executive salaried female employees, excluding engineers, who have suffered gender discrimination in compensation and promotion; 2) hourly female employees covered by International Association of Machinists (IAM) bargaining agreements who have suffered gender discrimination in overtime and promotions; 3) female engineers covered by Society of Professional Engineering Employees in Aerospace bargaining agreements who have suffered gender discrimination in overtime. Motion for Class Certification (Doc. 137).

Defendant then moved for summary judgment based on statute of limitations, exhaustion of administrative remedies, and standing issues. Motion for Partial Summary Judgment (Doc. 166). Defendant also argued that certain state law claims did not apply. *Id.*

In its April 25, 2003, Memorandum and Order (April 25, 2003 Order), the Court first considered Defendant's motion for summary judgment. (Doc. 231.) Based on the agreement of the parties, the Court granted summary judgment to Defendant on any putative class claims under Title VII for events before April 2, 1999. The Court also granted summary judgment on the class claims of putative Subclass 3 based on the statute of limitations, on § 301 of the LMRA, and on some of the state law claims.[2] *See* April 25, 2003 Order, at 7–18. Having decided these claims

were barred, the Court next examined whether Subclasses 1 and 2 should be certified for the remaining claims. The Court certified Subclasses 1 and 2 for the Title VII disparate impact claims, but the Court denied certification on the rest. *See id.* at 33–49.

Plaintiffs soon moved for a modification of the class period, however. *See* Motion to Modify (Doc. 236.) Plaintiffs essentially contended that summary judgment was improvidently granted on the Title VII claims for events occurring before April 2, 1999. *Id.* at 2–3. Before the Court ruled, however, Plaintiffs also moved to decertify three of the Plaintiffs, Mary Dean, Faith Bridgewater, and Verlene Maholmes, as class representatives. *See* Motion for Leave (Doc. 256). Dean, Bridgewater, and Maholmes responded with a pro se motion to remove Plaintiffs' counsel (Hagens Berman LLP, and Hutton & Hutton) as class counsel. *See* Motion for the Court to Remove (Doc. 259). Filings by Plaintiffs' counsel and Dean, Bridgewater, and Maholmes included copies of acrimonious attorney-client communications regarding the litigation. *See* Memorandum and Order filed October 3, 2003 (Doc. 278).

The motions where heard by the Court on November 13, 2003, where Dean also appeared and stated her concerns. In its Memorandum and Order filed November 26, 2003 (November 26, 2003 Order), (Doc. 313), the Court explained its rationale for denying the proposed modification of the class period. *See id.* at 4–15. The Court also granted the motion to decertify Dean, Bridgewater, and Maholmes as class representatives. *Id.* at 15–16. The Court refused, however, to remove Plaintiffs' counsel as class counsel. *Id.* at 16–18.[3]

---

**2.** The Plaintiffs did not include their federal or state equal pay claims in the motion for class certification. *See* April 25, 2004 Order at 24 n. 11.

**3.** Dean, Bridgewater, and Maholmes responded by moving the Court to recuse itself. (Doc. 316.) Dean, Bridgewater, and Maholmes also sought reconsideration of the order decertifying them as class representatives, and they asked to have service of the Court's orders separately from class counsel. (Docs. 317–318). The

Court denied these motions in its Memorandum and Order filed January 7, 2004 (January 7, 2004 Order). (Doc. 337.) Dean, Bridgewater, and Maholmes then took an interlocutory pro se appeal on these issues. *See* Notice of Interlocutory Appeal (Doc. 338). The Tenth Circuit dismissed this appeal because it was not taken from a final order and was not otherwise a permissible interlocutory appeal. *See* Appeal Mandate (Doc. 360).

Plaintiffs next brought an unopposed motion to change the case caption. Unopposed Motion for Order (Doc. 319). The Court agreed with the suggestion that the caption should reflect the new status of Dean, Bridgewater, and Maholmes as individual plaintiffs only. *See* Order filed December 10, 2003 (Doc. 320). The Court made clear, however, that the three remained class members. *Id.*

The parties then conducted discovery on the merits of the class claims. Defendant eventually moved for summary judgment or, in the alternative, to decertify the Class. *See* Motion for Summary Judgment (Doc. 325). Based on continuing difficulties, Plaintiffs also moved to sever the individual claims of Dean, Bridgewater, and Maholmes from the lawsuit, and Plaintiffs' counsel moved to withdraw as their counsel of record for the individual claims. Motion to Withdraw (Doc. 357).

The Court ruled on these motions in its Memorandum and Order filed February 24, 2004 (February 24, 2004 Order). (Doc. 366.) The Court set out the results of the merits discovery, especially the statistical findings of Plaintiffs' expert Dr. Siskin, and concluded that the Class as defined in the April 25, 2003 Order was no longer viable. *Id.* at 11–12. The Court decertified Subclass 1, and the hourly employee disparate impact promotions claims in Subclass 2. This left the hourly employee disparate impact overtime claims in Subclass 2, which now constituted the Class. *Id.* Turning to the summary judgment issue, the Court granted summary judgment to Defendant because Plaintiffs failed to make out a prima facie case. *See id.*, at 13–23. Finally, the Court refused either to sever Dean, Bridgewater, and Maholmes from the case or to allow Plaintiffs' counsel to withdraw without substitute counsel. *See id.*, at 23–24.

Plaintiffs then moved for reconsideration of the Court's summary judgment rulings or, in the alternative, for certification of the Court's rulings with respect to the Class under Fed.R.Civ.P. 54(b). Motion for Reconsideration, at 13 (Doc. 368). The Court heard arguments on March 17, 2004. As stated in the Memorandum and Order filed March 18, 2004 (March 18, 2004 Order) (Doc. 372), the Court denied reconsideration and refused to grant Rule 54(b) certification. The Court's discussion of the Rule 54(b) issues and its direction to begin litigation of the individual claims reflected the Court's determination to resolve all claims, both class and individual, before any appellate review. *See* March 18, 2004 Order at 5. The Plaintiffs maintained this course of action was not feasible, however, and based on their requests at the March 17, 2004, hearing, the Court allowed Plaintiffs to file further arguments in support of class certification and Rule 54(b) certification. *See id.*, at 5.

In their renewed motion, Plaintiffs sought re-certification of the salaried employee compensation claims by changing the end of the class period from the present to March 1, 2001. *See* Renewed Motion for Class Certification, at 1 (Doc. 375). Plaintiffs argued this would establish the commonality and typicality the Court found lacking in its February 24, 2004 Order. The Court rejected this suggestion for the reasons set out in its Memorandum and Order filed April 28, 2004 (April 28, 2004 Order). (Doc. 380.) The Court also described in more detail its rationale for refusing the requested Rule 54(b) certification—in short, the Court was not convinced that allowing appellate examination of the class issues would hasten resolution of the case, especially with the individual claims still pending. The Court, therefore, denied certification and referred the matter to Magistrate Judge Humphreys for scheduling on the individual claims. *See id.* at 10–13.

Judge Humphreys ordered the Plaintiffs to identify the individual claims still remaining (Doc. 382), which Plaintiffs provided, including those of Dean, Bridgewater, and Maholmes. *See* Response (Doc. 383). Plaintiffs again asserted that litigation of the individual claims was financially irrational, however, and they proposed dismissing six of the individual claims without prejudice. *See* Motion to Dismiss Without Prejudice (Doc. 385). Plaintiffs stated they would proceed to trial on the individual claims of the remaining three not counting Dean, Bridgewater, and

Maholmes, whom they excluded from their discussion.

Dean, Bridgewater, and Maholmes filed a pro se response protesting that they had not been considered in the Plaintiffs' motion to dismiss. They attached communications with Plaintiffs counsel and filed declarations which showed a new level of bitterness in the attorney-client relationship. Plaintiffs counsel next filed a renewed motion to sever and to withdraw, and also provided the Court with details of the conflict and copies of attorney-client communications.

As the Court considered these filings, it became clear that the litigation over the individual claims fed the conflict between Plaintiffs' counsel and Dean, Bridgewater, and Maholmes. The solutions available to the Court were hardly satisfactory, however. Severance would itself cause piecemeal litigation, with possibly three new individual claims, and withdrawal would force complex procedural considerations upon the newly pro se litigants.

It also was clear to the Court that dismissing six of the Plaintiffs without prejudice would do little to streamline the process. If the Court were to dismiss without prejudice there would first be discovery for remaining three Plaintiffs, followed by three separate trials, and the Tenth Circuit would still in all likelihood not take jurisdiction. *See Heimann v. Snead*, 133 F.3d 767, 769 (10th Cir. 1998) (claims dismissed without prejudice were not a decision on the merits, and appellate jurisdiction was denied); *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1252 (10th Cir.1998) (same); *Cook v. Rocky Mountain Bank*, 974 F.2d 147, 148 (10th Cir.1992) (same). This is especially true given Plaintiffs' stated plan to seek the eventual reinstatement of the six as class representatives.

■ The plan to bring back the six also promised significant procedural wrangling on remand if the Tenth Circuit were to reverse the Court's class determinations. Fed. R.Civ.P. 41(a)(2), upon which Plaintiffs' mo-

tion was based, provides for dismissals of actions, not claims. *See Gobbo Farms & Orchards v. Poole Chemical Co., Inc.*, 81 F.3d 122, 123 (10th Cir.1996); *Campbell by and through Jackson v. Hoffman*, 151 F.R.D. 682, 684 (D.Kan.1993). The six would have been completely dismissed as parties, in other words, and the Court is not at all confident that they could successfully reassert their claims after a review which did not consider their suitability as class representatives. Effectively sequestering two-thirds of the class representatives only to have them reemerge after appeal would raise issues of fundamental fairness, in the Court's opinion.

The hearing held on July 28, 2004, confirmed the Court's view of the situation. Dean and Bridgewater appeared to protest the contemplated severance and withdrawal. Defendant made plain that it would contest appellate jurisdiction if Plaintiffs were allowed to dismiss without prejudice. Plaintiffs gave little explanation how the six dismissed Plaintiffs could properly rejoin the litigation upon any remand.

## II. RULE 54(b) CERTIFICATION

■ "When more than one claim for relief is presented in an action ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims ... only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Fed.R.Civ.P. 54(b). More than one claim for relief is presented in this action. Plaintiffs presented numerous claims, both on their own behalf and on behalf of others similarly situated. In the instance of hourly overtime, the Court certified a Class under the disparate impact theory and granted summary judgment to Defendant against all members of the Class. The Plaintiffs and class members who had such claims are now bound by the summary judgment, and it is final with respect to that entire claim. *See* April 28, 2004 Order at 10–11.[4]

---

4. Defendant argues that the disparate impact and disparate treatment claims are intertwined. *See* Boeing's Opposition to Certifying, at 5 (Doc. 398). It is true that both claims may be made upon a particular set of facts. *See Teamsters v.*

*United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396, 415 n. 15 (1977). They remain separate claims, however. *See id.* ("[c]laims of disparate treatment may be distinguished from claims that stress 'disparate im-

In other words, this is not the sort of "*indiscriminate* interlocutory review" which was rejected in *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 474, 98 S.Ct. 2454, 57 L.Ed.2d 351, 361 (1978) (emphasis in original). Because the decision on the class disparate impact overtime claim is final under 28 U.S.C. § 1291, Rule 54(b) certification provides "a practical means of permitting an appeal to be taken from one or more final decisions ... in multiple claims actions." *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 435, 76 S.Ct. 895, 100 L.Ed. 1297, 1306 (1956).

There is also no just reason for delay. The Plaintiffs maintain that they are unable to afford prosecuting their remaining individual claims. This is shown by the statements of counsel that any recovery on the remaining individual claims would not be worth the expense of the litigation, and by the willingness of six Plaintiffs to dismiss their claims rather than bring them to trial. They propose dismissal without prejudice, but the Court believes this would preclude appellate review. Dismissal with prejudice, on the other hand, would prevent these six from sharing in any eventual Class recovery or settlement. These alternatives are unsatisfactory, and the impasse is best remedied by entering judgment now.

Regarding the danger of piecemeal litigation, an advantage of class action lawsuits is certainly to avoid the "enormous transaction costs of piecemeal litigation." *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 860, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999). As described above, however, requiring final resolution of the individual claims before appeal imposes transaction costs of its own. In the Court's estimation, the costs are actually lower for all

involved if review of the critical summary judgment ruling is taken now, especially since the course of any future appeals is so uncertain. It is more certain, the Court believes, that present guidance from the Tenth Circuit would hasten the final resolution of the case.

Therefore, the Court will direct the clerk to enter final judgment with regard to the grant of summary judgment to Defendant as set out in the February 24, 2004 Order.

 Rule 54(b) certification of the summary judgment order allows appellate consideration of the underlying class certification as well. *See Bowdry v. United Airlines, Inc.,* 58 F.3d 1483, 1489 (10th Cir.1995) ("[a]ll prior interlocutory judgments ... merge[ ] into the final judgment and bec[o]me appealable at that time.").[5] As one authority puts it:

> Civil Rule 54(b) provides the most obvious alternative to appeal from a final judgment that concludes the entire action. If final judgment is entered under Rule 54(b) as to part of the action, the class certification question can be reviewed on appeal from that judgment if the certification question is substantially congruent with the portion of the case that has been cast in judgment. If the certification question implicates portions of the case that remains pending in the district court, however, it is not likely to be reviewed.

Wright, Miller & Cooper, 15B Federal Practice and Procedure: Jurisdiction 2d § 3914.19, 67–68 (1992). *See also Evans v. City of Chicago,* 689 F.2d 1286, 1292 (7th Cir.1982), overruled on other grounds, 873 F.2d 1007 ("The entry of a final judgment

---

pact.' "). Because the statistical analysis conducted by the Court in reviewing the Plaintiffs' class disparate impact overtime claim did not include proof of discriminatory motive as required for the remaining disparate treatment claims, and because the class disparate impact overtime claim involved different relief (equitable remedies) than the disparate treatment claims (equitable remedies plus compensatory and punitive damages), the class disparate impact overtime claim is distinct and separable from the claims left unresolved. *See Oklahoma Turnpike Authority v. Bruner,* 259 F.3d 1236, 1242–43 (10th Cir.2001); April 25, 2003 Order, at 38–39.

5. The Court is aware that in *Bowdry,* "the summary judgment ... disposed of these appellants' only remaining claim, completely terminating their action." 58 F.3d at 1489. Certification is proper not only as to all the claims of certain parties, but also as to all the elements of certain claims, even if the parties have other claims remaining. *See* Rule 54(b) ("the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties ....").

under Fed.R.Civ.P. 54(b) allows this court to review the determination of the class found entitled to relief."); *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 245 (Third Cir.1975), *cert. denied.* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 ("The district court, pursuant to Rule 54(b), rendered final the partial summary judgment ... [t]he determination of the class became final for the purposes of 28 U.S.C. § 1291 at that time.").[6]

In this case, the certification of the Class implicates no portion of the individual claims which remain pending before the Court. The certification of the Class is also substantially congruent with the summary judgment ruling, because if the class certification were erroneous, summary judgment on the class claims would also be in error. This means that, in addition to the summary judgment ruling in the February 24, 2004 Order, the redefinition of the Class in that same order, and the April 25, 2003 Order which initially established class certification on the hourly overtime disparate impact claims, are also appealable under Rule 54(b).[7]

Furthermore, the November 26, 2003 Order which denied Plaintiffs' motion to extend the class period beyond April 2, 1999, and which removed Dean, Bridgewater, and Maholmes as class representatives, was also substantially congruent with the eventual summary judgment and merges into that ruling. Any review of the certification underlying the summary judgment ruling should include the class period (which defined not only the Class but also the disparate impact statistics considered by the Court on summary judgment) and the continuing adequacy of the class representatives (which is an element of the certification analysis). This last rationale applies also to the January 7, 2004 Order which denied the pro se motion to reconsider decertifying Dean, Bridgewater, and Maholmes.

■ Regarding orders made after the entry of summary judgment, the Court suggests that at least one may be considered under pendent appellate jurisdiction. *See* Wright, Miller & Cooper, 16 Federal Practice and Procedure: Jurisdiction 2d § 3937, 686 (1996) ("Entry of a partial final judgment under Civil Rule 54(b) provides another opportunity for asserting pendent jurisdiction that does not threaten great inroads on the final judgment rule.") Pendent appellate jurisdiction is proper when the "otherwise non-appealable decision is 'inextricably intertwined' with the appealable decision, or where review of the nonappealable decision is necessary to ensure meaningful review of the appealable decision." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir.1997), quoting *Swint v. Chambers County Com'n*, 514 U.S. 35, 50–51, 115 S.Ct. 1203, 131 L.Ed.2d 60, 74–75 (1995).

The March 18, 2004 Order which denied Plaintiffs' motion for reconsideration of the summary judgment ruling fits this requirement. It is inextricably intertwined with the appealable decision because it considered and rejected further arguments raised by Plaintiffs against the same decision. If not inextricably intertwined, then meaningful review of the appealable decision would be ensured by consideration of all arguments raised before this Court regarding its ruling, especially where Plaintiffs in effect argued that the Court had applied the wrong legal standard on summary judgment, and where Plaintiffs asserted that the Court's ruling was contrary to United States Supreme Court authority. *See* March 18, 2004 Order, at 2–3.

---

**6.** The Court is aware of *West v. Capitol Federal Savings and Loan Assoc.*, 558 F.2d 977, 981 (10th Cir.1977), which analyzed 54(b) under the now rejected "death knell" doctrine. *See Coopers & Lybrand*, 437 U.S. at 477, 98 S.Ct. 2454, 57 L.Ed.2d at 363. The *West* case did involve both a final order (a dismissal) and a class certification order, 558 F.2d at 980, but the Tenth Circuit found the dismissal was void and set it aside. *Id.* Therefore, left with "no final judgment,"the Tenth Circuit held 54(b) did not apply. *Id.* at 982. This Court knows of no Tenth Circuit cases holding that, even where summary judgment on a class claim is final under Rule 54(b), the under-

lying class certification may not be considered as well.

**7.** The Title VII salaried compensation and promotion claims, the hourly overtime disparate treatment claims, the hourly promotion claims, and certain state law claims were also considered in the April 25, 2003 Order. The Court cannot conclude that these merged into the summary judgment ruling. Whether they are reviewable under 28 U.S.C. § 1292(b) is considered below.

III. 28 U.S.C. § 1292(b)

■ At the July 28, 2004, hearing, the Court directed the parties to provide a proposed order pursuant to Rule 54(b). During an unrecorded telephone conference with the Court on July 29, 2004, Plaintiffs raised 28 U.S.C. § 1292(b) as an additional basis for appellate jurisdiction. The parties could not reach an agreed order, and they have provided the Court with their respective proposals. Defendant also filed an objection to appellate review of the class rulings and attached its version of the order to the objection. (Doc. 398.) [8]

To come under 28 U.S.C. § 1292(b), an order must involve "a controlling issue of law as to which there is substantial ground for difference of opinion . . . ." The proposed orders of both Plaintiffs and Defendant rely on the supposed divergence between this Court's rulings and those of the other federal courts dealing with the litigation arising out of the *Beck* case. The facts of those cases are not before the Court, however. The record here is concerned primarily with events at Defendant's Wichita operations, and the Court is not in a position to state whether the facts elsewhere explain the allegedly inconsistent decisions of the various courts. Considering also that the Court has not reviewed the briefing in those cases, the Court cannot conclude that decisions elsewhere provide a substantial ground for a difference of opinion. Finally, the Court does not believe that its rulings otherwise provide substantial grounds for a difference of opinion.

IT IS THEREFORE ORDERED that judgments regarding the Class of:

all hourly female employees covered by collective bargaining agreements with the IAM who were or are employed at Defendant's Kansas facilities at any time from April 2, 1999, to the present and who have been, or continue to be, discriminated against on the basis of gender in the assignment of overtime,

as set out in the Court's orders filed April 25, 2003, November 26, 2003, January 7, 2004, February 24, 2004, and March 18, 2004, are final orders;

IT IS FURTHER ORDERED that the clerk shall enter a separate judgment to that effect.

**8.** In a written communication, Defendant also asks the Court to direct Plaintiffs to file their version, or otherwise to cause Plaintiffs' version to be filed. Defendant has leave to file Plaintiffs' version if it wishes to do so to complete the record. *See* Fed.R.App.P. 10(e)(1).