Carol DALY and Kathy Burgess, individually and on behalf of others similarly situated, Plaintiffs,

v.

Jeremy HARRIS, in his individual capacity and his official capacity as Mayor of the City and County of Honolulu, et al., Defendants.

Civ. No. 01–00458 ACK/LEK.

United States District Court,
D. Hawai'i.

Order Denying Reconsideration
May 29, 2002.

April 25, 2002.

James J. Bickerton, Christine M. Daleiden, Bickerton Saunders & Dang, Honolulu, HI, for plaintiffs.

David Z. Arakawa, Gary Y. Takeuchi, Office of Corporation Counsel–Honolulu, John T. Komeiji, Tracy J. Fujimoto, Watanabe Ing & Kawashima, Honolulu, HI, for defendants.

### ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

KAY, District Judge.

### BACKGROUND

This lawsuit involves a challenge to the City and County of Honolulu's practice of charging non-residents a $3.00 fee to enter the beach area of Hanauma Bay. Hanauma Bay, a state designated nature preserve, is a beautiful cove located on the south-east side of Oahu popular amongst both local residents and tourists alike for activities such as swimming, snorkeling, sun bathing and picnicking. Adjacent to Hanauma Bay is Koko Head Regional Park ("Park"), a state park run by the City and County of Honolulu. The beach area of Hanauma Bay is accessible (by foot) only through the Park.

In 1996, the Honolulu City Council enacted Ordinance Number ("No.") 96–19 which instituted a $3.00 fee for nonresidents seeking entry to the beach area and a $1.00 parking fee for all visitors. Ordinance No. 96–19,

codified at Sec. 10–2.11 of the Revised Ordinances of Honolulu ("ROH"), provides in relevant part:

> (a) The following fees shall be assessed for entrance to the Hanauma Bay Nature Preserve:
>
> (1) For nonresidents of Hawaii, 13 years of age and older, to enter the lower preserve (beyond the scenic lookout): $3.00 per person.
>
> (2) For vehicles entering the preserve, a $1.00 parking fee shall be assessed; provided that this parking fee shall be refunded for all vehicles departing from the preserve within 15 minutes of their entry.
>
> (b) The director of parks and recreation is authorized to waive the fees provided by this section and to allow entry of any person to the Hanauma Bay Nature Preserve as part of an educational or promotional program or package made available or authorized by the city.

REVISED ORDINANCES OF HONOLULU § 10–2.11 (2001). Ordinance No. 96–19 also establishes the Hanauma Bay Nature Preserve Fund, the related provisions of which are codified at ROH Sections 6–51.1 through 6–51.4. ROH Section 6–51.2, regarding the Purpose of the Fund, provides:

> There shall be deposited into the Hanauma Bay Nature Preserve fund all receipts from the fees imposed under Section 10–2.11 and all concession revenues from the Hanauma Bay Nature Preserve concessions. All moneys deposited into this fund shall be used for the following purposes in order of priority as indicated:
>
> (1) First, for the operation, maintenance and improvement of the Hanauma Bay Nature Preserve;
>
> (2) Second, for educational and orientation programs for visitors to the preserve;
>
> (3) Third, for carrying capacity study of the preserve and for other studies relating to the environmental condition of the preserve; and
>
> (4) Fourth, if funds are available, for the operation, maintenance and improve-

ment of the following park facilities: Koko Head District Park, Maunalua Bay Beach Park, Koko Head Rifle Range, and the Koko Crater Botanical Garden.

REVISED ORDINANCES OF HONOLULU § 6–51.2 (2001).

In October of 2000, Plaintiff Carol Daly, a California resident, visited Hanauma Bay. As she proceeded along the walkway to the beach, she came upon a city-erected turnstile at which she paid the $3.00 fee assessed for entry. In June of 2001, Plaintiff Cathy Burgess, then and currently a resident of Colorado, but formerly a Hawaii resident, visited Hanauma Bay for the purpose of having a family gathering at the beach area. Plaintiff Burgess alleges that she and her family "sought to associate with each other, enjoy each other's company and communicate with each other about their respective lives and experiences." Second Amend. Compl. ("Compl.") ¶ 36. Unlike Plaintiff Daly, when Plaintiff Burgess arrived at the turnstile, she refused to pay the $3.00 fee and left without entering.

On July 10, 2001, Plaintiffs Daly and Burgess (collectively "Plaintiffs") initiated this lawsuit against Defendants Jeremy Harris (in both his individual capacity and his official capacity as Mayor of the City and County of Honolulu), Caroll Takahashi (as Director of the Department of Budget and Fiscal Services), William Balfour (as Director of the Department of Parks and Recreation), and the City and County of Honolulu to challenge the $3.00 entry fee. Plaintiffs' Second Amended Complaint, filed on November 20, 2001, asserts the following claims: Count I (First Amendment), Count II (Violation of Hawaii Constitution), Count III (Violation of Hawaii Revised Statutes ("H.R.S.") § 7–1 and Chapter 115), Count IV (Unauthorized Taxation), Count V (Privileges and Immunities), Count VI (Equal Protection), Count VII (Fourth Amendment), Count VIII (International Covenant on Civil and Political Rights),[1] Count IX (H.R.S. Chapter 480), Count X (Declaratory Judgment), Count XI (Injunctive Relief), Count XII (Common–Law Recovery Remedy), Count XIII (Unjust Enrichment Remedy), Count XIV (Constructive Trust) and Count XV (Punitive Damages).

On January 3, 2002, Defendants filed eight separate Motions to Dismiss with Prejudice or Alternatively, for Partial Summary Judgment. On February 28, 2002, Plaintiffs opposed all of Defendants' Motions, save Defendants' Motion regarding Count VIII, and on March 8, 2002 filed the instant Motion for Class Certification pursuant to Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23. The hearing on Defendants' eight motions was rescheduled from March 18, 2002 to May 28, 2002. Defendants filed an Opposition to Plaintiffs' Motion for Class Certification on April 4, 2002 to which Defendants replied on April 11, 2002. The Court heard oral argument on April 22, 2002.

### STANDARD OF REVIEW

### CLASS CERTIFICATION

A class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen'l Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The burden of establishing these prerequisites falls on the party seeking certification. *See* 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1759 (1986) (citing numerous cases)l; *see also Armstrong v. Davis,* 275 F.3d 849, 868 (9th Cir.2001).

Plaintiffs must demonstrate that the instant case (1) conforms to the four requirements of Rule 23(a) and (2) fits into one of the three categories under Rule 23(b).

The four requirements of Rule 23(a) are: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the

---

**1.** Plaintiffs indicated that they have agreed to voluntarily dismiss this claim in their Opposition to Plaintiffs' Motion to Dismiss, or Alternatively, for Partial Summary Judgment Regarding Plaintiffs' Claims under Count VII for Violations of the Fourth Amendment.

representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a) (West 2002).

Next, the case must fall under one of the three categories of Rule 23(b):

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b) (West 2002).

Analysis of whether the above-stated requirements are met should not involve inquiry into the merits of the plaintiff's claims. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). What is required of the Court is to analyze the allegations of the complaint and other material (material sufficient to form a reasonable judgment on each requirement), consider the nature and range of proof necessary to establish those allegations, determine as best able the future course of the litigation and then determine if the requirements are met at the time. *See Blackie v. Barrack,* 524 F.2d 891, 900–01 (9th Cir.1975).

### DISCUSSION

Through the instant motion, Plaintiffs move the Court to certify a plaintiff class ("Class") defined as "non-residents of Hawaii who have been required to pay $3.00 to access the public beach at Hanauma Bay." Plaintiffs further request certification of two sub-classes, the first consisting of "those non-residents who have paid the $3.00 access fee," ("sub-class I"), the second of "those non-residents who have been unable or unwilling to access the beach at Hanauma Bay, despite a desire to do so, as the result of the imposition of the $3.00 access fee," ("sub-class II"). *See* Mot. for Class Certification ("Mot.Cert.") at 2. In support of their Motion, Plaintiffs argue that the proposed classes meet the four requirements of F.R.C.P. Rule 23(a) and qualify for certification under all subsections of Rule 23(b).

Defendants, without specifying which of Rule 23's requirements are lacking, raise the following objections: (1) Plaintiffs' estimate of the number of potential plaintiffs in each sub-class is arbitrary, (2) Plaintiff's Motion for Certification is untimely, (3) the proposed class is inadequate because it does not include foreigners and Hawaii residents who may have paid the $3.00 fee, and (4) the statute of limitations bars certain proposed class member's claims. In response, Plaintiffs characterize Defendants' first argument as an insufficient challenge to the numerosity requirement of Rule 23(a)(1). Plaintiffs further contend that timeliness is not an appropriate basis for denying class certification[2] and that Defendants' third and fourth arguments, regarding the inadequacy of the class and statute of limitations, respectively, require impermissible consideration of the merits.

---

**2.** The Court agrees with Plaintiffs that denial on the basis of untimeliness is inappropriate here. Plaintiffs' Motion for Certification, filed approximately eight months after the original complaint, and four months after the Second Amended Complaint, does not constitute unreasonable delay. *See Probe v. State Teachers' Retirement System,* 780 F.2d 776, 778 (9th Cir.1986) (eighteen month delay reasonable). Moreover, the prejudice Defendants represented at the hearing as having suffered appears remedied by the Court's limitation of Plaintiffs' class definitions as discussed herein.

As a preliminary matter, the Court notes that Plaintiffs, based on their generalized arguments and failure to state otherwise, appear to seek certification of the Class, sub-class I, and sub-class II with respect to the entire lawsuit, not particular issues or claims. The Court turns to the requirements of Rule 23(a) and (b) with this in mind.

## I. RULE 23(a)

Rule 23(a)(1)–(4) sets forth requirements commonly referred to as: (1) numerosity, (2) commonality, (3) typicality and (4) adequate representation. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998) (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). Each sub-class must independently meet the requirements of Rule 23. *See Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir.1981) ("each subclass must independently meet the requirements of Rule 23 for the maintenance of a class action").

### A. Numerosity

■ To qualify for certification, the class must be so numerous that joinder of all members is impracticable. Fed.R.Civ.P. 23(a)(1). When a class is large in numbers, joinder is usually impracticable. *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir.1982), *vacated on other grounds*, 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982) (citations omitted). Plaintiffs are not required to state the exact number in the proposed class, *see Schwartz v. Harp*, 108 F.R.D. 279, 281 (C.D. Cal.1985), but at the same time cannot rely on mere speculation in estimating class size. *See* NEWBERG AND CONTE, 1 NEWBURG ON CLASS ACTIONS § 3.05 (3d ed.1992) (citations omitted), *see also Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir.1989); *Gray–Mapp v. Sherman*, 100 F.Supp.2d 810, 814 (N.D.Ill.1999) ("Mere conclusory allegation of numerosity and speculation as to class size ... [is] not enough to satisfy the rule."). Impracticability does not mean impossibility, but only the difficulty or inconvenience of joining all members of the class. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir.

1964). Thus, impracticability of joinder can be demonstrated without reference to class size, for example in cases where class members are difficult to locate or are unknown. *See Jordan*, 669 F.2d at 1319–20 (presence of other indicia of impracticability, such as joinder of unknown individuals, obviates need to ascertain class size).

■ Plaintiffs estimate, based on the revenues collected by the City, that the Class likely consists of in excess of 350,000 and as many as 4,000,000 members. While Defendants question Plaintiffs' calculation method, they do not argue that the class is not sufficiently large so as to make joinder impracticable. Indeed, such an argument would be untenable under the circumstances, given the amount of revenue generated from entrance fee collection and the manifest popularity of the Bay among non-resident visitors. For these reasons, the Court finds that Plaintiffs have sufficiently demonstrated that the Class and sub-class I meet Rule 23(a)(1)'s numerosity requirement. *See Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D.Cal.1985) (citing *Grossman v. Waste Management, Inc.*, 589 F.Supp. 395 (N.D.Ill.1984), for the proposition that a court is entitled to make "common sense assumptions" in order to support a finding of numerosity).

Plaintiffs' calculation of the size of sub-class II, however, is problematic. Plaintiffs estimate that membership in sub-class II is in excess of 360 people. Plaintiffs arrive at this figure by assuming that for every ten thousand fee-paying visitors to Hanauma Bay, there was one person who did not enter due to the $3.00 fee. While recognizing that Rule 23(a)(1) does not require Plaintiffs to pin-point the precise number of members in the putative class, the Court agrees with Defendants that Plaintiffs' estimate of sub-class II is purely speculative. Even Plaintiffs appear to recognize weakness in their calculation method. *See* Mot. Cert. at 7 ("the second sub-class ... is obviously more difficult to count"). Insofar as Rule 23(a)(1) requires Plaintiffs to demonstrate that sub-class II actually exists, it appears that they have failed. *Compare Equal Employment Opportunity Comm'n v. Gen. Tel. Co.*, 599 F.2d 322, 328 (9th Cir.1979) (quoting 7A

CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: Civil Class Actions §§ 1760 and 1761 for the proposition that a court must first find that a class exists); JAMES WM. MOORE, 5 MOORE'S FEDERAL PRACTICE § 23.21 (3d ed.2000) ("It is axiomatic that in order for a class action to be certified, a class must exist") *with Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319–20 (9th Cir.1982), *overruled on other grounds*, 713 F.2d 503 (9th Cir.1983) ("joinder of unknown individuals is inherently impracticable"), NEWBERG AND CONTE, 2 NEWBERG ON CLASS ACTIONS § 6.14 (3d ed.1992) ("Though some courts, prodded by early commentators, have retained concepts of original Rule 23 requiring the existence of a class before applying amended Rule 23 criteria, most courts have recognized that the 1966 amendments rejected the notion that a threshold class must first exist in order to maintain a class action."). Nevertheless, for analytical purposes, the Court will assume that sub-class II members meet Rule 23(a)(1)'s numerosity requirement since in any event the Court finds that sub-class II fails to satisfy Rule 23(b)(3) predominance and superiority, discussed *infra* Section II.C.1 and C.2.

### B. Commonality

Section (a)(2) of Rule 23 requires that there exist questions of law and fact common to the class. *See* Fed.R.Civ.P. 23(a)(2). As Rule 23(a)(2) is construed permissively, "all questions of fact and law need not be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019. "Commonality" is established by "the existence of shared legal issues with divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies within the class." *Id.* At least one Court has observed that the "commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3)". *Id.* Moreover, class suits for declaratory or injunctive relief, "by their very nature often present common questions satisfying Rule 23(a)(2)." CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, 7A FEDERAL PRACTICE AND PROCEDURE § 1763 (1986).

Plaintiffs argue that there are numerous legal issues common to the class, specifically, "whether the Defendants, by charging an access fee to non-residents only, have violated those persons' (1) First Amendment rights, (2) rights under the Privileges and Immunities Clause, (3) rights under the Equal Protection Clause, (4) rights under the Fourth Amendment, and (5) constitutional, statutory and common law rights under Hawaii law." Mot. Cert. at 8–9. Defendants do not appear to contend that commonality is lacking.

Upon review of Plaintiffs' Amended Complaint and the claims asserted therein, it is evident that Plaintiffs rely on various theories of liability, some of which apply to certain members of the Class, but not others. Indeed, based on the allegations in the Complaint, while all members in the Class assert Counts II (Violation of the Hawaii Constitution), III (Violation of H.R.S. Section 7–1 and Chapter 115), IV (Unauthorized Taxation), V (Privileges and Immunities), VI (Equal Protection), VII (Fourth Amendment), X (Declaratory Judgment), XI (Injunctive Relief), and X (Punitive Damages), (collectively "Class Claims"), Count I (First Amendment) is particular to Plaintiff Burgess and those similarly situated, and Counts IX (H.R.S. Chapter 480), XII (Common-law recovery remedy), XIII (Unjust Enrichment) and XIV (Constructive Trust) are particular to Plaintiff Daly and those similarly situated (collectively "Sub–Class I Claims"). The Court recognizes, however, that Rule 23(a)(2) permits putative class members' to seek "disparate legal remedies" and that there exists, as Plaintiffs argue, a number of common legal and factual issues. All class members assert the Class Claims and thus rely on these shared legal theories. The members of subclass I assert the Class Claims as well as the Sub–Class I claims. The members of subclass II assert the Class Claims as well as Count I. Thus, the Court finds that the members of the Class, sub-class I, and sub-class II share sufficient commonality within each respective class to satisfy the minimal requirements of Rule 23(a)(2). *Cf. Hanlon*, 150 F.3d at 1020.

### C.  Typicality

■  The typicality criterion requires that the Plaintiffs' claims be of the same nature as the rest of the class.  *See* Fed.R.Civ.P. 23(a)(3).  The requirement serves "to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts*, 976 F.2d 497, 508 (9th Cir.1992).  The representative's claims are "'typical' if they are reasonably co-extensive with those of absent class members," *Hanlon*, 150 F.3d at 1020, or if the claim arises from the "'same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory.'" *Ditty v. Check Rite, Ltd.*, 182 F.R.D. 639 (D.Utah 1998) (citing *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983)) (further citations omitted).  However, where the claims of the named representative would be subject to unique defenses which could become the focus of the litigation because of facts peculiar to that particular plaintiff, typicality is lacking.  *See Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir.1996) (typicality requirement not met where class representatives allege different injuries from those suffered by other class members).  As Rule 23(a)(3) should be interpreted permissively, it does not mandate that the claims be "substantially identical." *Hanlon*, 150 F.3d at 1020.

■  Plaintiffs argue that the named-Plaintiffs' claims and any defenses to such claims are typical of other Class members.  Mot. Cert. at 10.  Plaintiffs point out that their claims and that of the putative Class rest on the same legal theories.  *Id.* Plaintiffs further contend that Plaintiff Daly, a non-resident who visited Hanauma Bay within the past two years and who paid the $3.00 access fee is typical of sub-class I, while Plaintiff Burgess, a non-resident who visited Hanauma Bay within the past two years and who declined to pay the $3.00 access fee and was denied access as a result is typical of sub-

class II. Defendants do not specifically challenge fulfillment of this requirement.

Typicality is not lacking with respect to the Class members.  The claims asserted by Plaintiffs Daly and Burgess and the putative Class members stem from the City's passage and enforcement of R.O.H. Section 10–2.11. *See Ditty*, 182 F.R.D. at 642 ("named plaintiff's claim is typical if it arises from the 'same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory.'") (citations omitted).  At this point, it does not appear, nor do Defendants contend, that Plaintiff Daly incurred atypical injuries or that unique defenses [3] will arise with respect to her.  As for Plaintiff Burgess, although she is somewhat atypical with respect to members of the Class that paid the $3.00 fee, her claims (legal theories) are substantially identical, save Count I which is at least co-extensive with the Class claims. Based on these reasons, and noting that Rule 23(a)(3) should be interpreted permissively, the Court finds that the claims of the named-Plaintiffs are sufficiently typical of the Class.

Likewise, for the above-stated reasons, the Court also finds that Plaintiff Daly's claims are typical of the claims asserted by members of sub-class I. Plaintiff Daly does not stand in a unique position relative to the members of sub-class I. The injuries suffered by her, loss of $3.00 and alleged violation of her constitutional rights, are typical of the sub-class and it does not appear that she is subject to defenses particular to her.

The Court finds it difficult to assess whether Plaintiff Burgess's claims are typical of the members of sub-class II without knowing the circumstances or identities of these people.  Assuming there exist other individuals that refused to pay or lacked funds to pay for entry, it seems unlikely that all or even a substantial number of people would contend that they intended to engage in First Amendment activities at the beach.  Howev-

---

**3.**  Defendants argue that the Class and sub-classes, as currently defined, inappropriately include members who are barred by the statute of limitations from seeking relief under Section 1983.  The Court notes that though Plaintiff Daly, by virtue of her recent (within 2 years of the filing of the lawsuit) visit to Hanauma Bay may not be amenable to a statute of limitations defense, members of the proposed Class and sub-class I who visited Hanauma Bay prior to July of 1999 are subject to such a defense with respect to their Section 1983 claims.

er, Plaintiff Burgess's claims-namely the Class Claims-are "substantially similar" with the claims assertable by members of sub-class II and her First Amendment claim is "reasonably co-extensive" with the Class claims. Thus, interpreting the rule permissively, as the Ninth Circuit instructs, the Court finds Plaintiffs have sufficiently satisfied Rule 23(a)(3) with respect to sub-class II.

### D. Adequate Representation

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). This requirement serves to protect the due process rights of absent class members who will be bound by the judgment. *See Hanlon*, 150 F.3d at 1020. Adequate representation in the Ninth Circuit " 'depends on the qualifications of counsel for the representative, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.' " *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir.1994) (citing *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 390 (9th Cir.1992)). Likewise, the Court should consider the following factors: (1) do the named plaintiffs and their counsel have any conflict of interest with other class members? and (2) will the named plaintiffs and counsel prosecute the action vigorously on behalf of the class? *Hanlon*, 150 F.3d at 1020. Defendants objections regarding the foreign visi-

tors and the statute of limitations defense warrants discussion here.

Plaintiffs set forth the qualifications of counsel and the two named-Plaintiffs. According to Plaintiffs, counsel has twenty years of experience and has litigated complex cases. The Court has no reason to doubt, nor does Defendant raise objections to, counsel's competency.

■ Plaintiffs Daly and Burgess, however, do not appear to be adequate representatives of every member included in the Class. As defined in Plaintiffs' Motion for Certification, the Class ostensibly includes foreign visitors. However, Plaintiffs define the Class in their Reply as "all persons who were denied rights afforded citizens of the United States by the City and County Ordinance," *see* Reply, filed 4/11/02, at 4–5, refer to the class as being "scattered across all of the 49 other states" in their Motion, *see* Mot. Cert. at 15, and stated at the hearing that they do not purport to represent the interests of foreign visitors. Accordingly, the Court finds that these individuals are inadequately represented by the named-Plaintiffs.[4]

Next, it is questionable whether Plaintiffs Daly and Burgess, both having visited Hanauma Bay within the past two years, serve as adequate representatives for those members susceptible to Section 1983's statute of limitations ("SOL") defense.[5] Especially troubling to the Court is Plaintiffs' apparent belief in the Class's entitlement to all of the

---

4. Additionally, the legal theories of the named-Plaintiffs and of foreign Class members will likely differ as foreign entities and aliens are not entitled to constitutional protection without having developed substantial connections with the United States. *See United States v. Verdugo–Urquidez*, 494 U.S. 259, 270–71, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990); *cf. People's Mojahedin Org. of Iran v. United States Dept. of State*, 182 F.3d 17, 22 (D.C.Cir.1999) ("A foreign entity without property or presence in this country has no constitutional rights, under the due process clause or otherwise."). This raises typicality and commonality concerns.

5. While Plaintiffs insist that evaluation of the statute of limitations defense involves impermissible inquiry into the merits of Plaintiffs' claims, many courts find it appropriate to consider statute-of-limitations defenses in the "class certification calculus." *See O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 410–11 (C.D.Cal.2000) (cit-

ing numerous cases that have denied class certification on the ground that the limitations defense made class treatment inappropriate and that have taken into consideration a limitations defense in evaluating a certification motion); *Rozema v. Marshfield Clinic*, 174 F.R.D. 425, 435 (W.D.Wis.1997) (requiring Plaintiffs to show that the proposed class representatives would be adequate representatives of those potential class members purchasing outside the limitations period). The Court notes that in *Cameron v. E.M. Adams & Co.*, 547 F.2d 473 (9th Cir.1976), cited by Plaintiffs in their Reply, the Ninth Circuit held that individual issues of compliance with the statute of limitations did not predominate (a Rule 23(b)(3) requirement) over common questions. *See id.* at 476. Here, the Court analyzes the statute of limitations defense as it relates to Rule 23(a)(4) adequacy of representation, not Rule 23(b)(3) predominance.

revenue collected since enactment of the challenged ordinance. With this belief, the named-Plaintiffs possess an interest in limiting membership, and therefore may not zealously seek to overcome the statute of limitations obstacle on behalf of absent Class members, so as to increase individual recovery. *Cf. In re Holocaust Victim Assets Litigation v. Swiss Bankers Assoc.*, 225 F.3d 191, 200 (2d Cir.2000) (discussing allegation of inadequate representation based on broad initial definition of the class to garner large settlement and subsequent motive to limit membership to increase individual recovery). Even absent this direct conflict of interest, the Court recognizes that the SOL-susceptible Class members' due process rights are jeopardized by the fact that the named-Plaintiffs do not face a similar obstacle. The named-Plaintiffs may, due to the many demands involved in prosecuting this case and in responding to the issues most prevalent to them, inadvertently neglect or fail to anticipate issues particular to the SOL-susceptible Class members.

With respect to the remaining Class members, Plaintiff Daly and Burgess appear to be adequate representatives. Likewise, it is not evident that Plaintiff Daly's interests are adverse to the remaining members of sub-class I nor are Plaintiff Burgess's with respect to remaining members of sub-class II. Defendants do not contend otherwise.

### E. Conclusion

Based on the foregoing analysis, the Court finds that compliance with Rule 23(a)(1)–(4) requires modification of Plaintiffs' proposed classes. The Court finds that the named-Plaintiffs do not adequately represent foreign visitors and the SOL-susceptible members of the Class. Accordingly, the Court limits the Class to: (1) non-residents of Hawaii, (2) who have been required to pay $3.00 to access the beach after July 10, 1999,[6] (3) and at the time, were U.S. citizens. Likewise, sub-class I is limited to members of the Class who paid the $3.00 fee and sub-class II is limited to members of the Class who were unable or unwilling to pay the $3.00 access fee. Having redefined the Class, sub-class I, and sub-class II to conform to the requirements of Rule 23(a), the Court will now assess whether certification is appropriate under Rule 23(b).

## II. Rule 23(b)

Plaintiffs contend that class certification is proper under all subsections of Rule 23(b), however their supporting arguments are directed only at subsections (b)(1)(B), (b)(2) and (b)(3); subsection b(1)(A)[7] is not

---

6. Limiting the Class to those who visited Hanauma Bay within the past two years preserves Rule 23(b)(3) predominance and superiority. The Court notes that failure to do so would create administrative problems in determining who would be entitled to pursue relief under Section 1983 (two year limitation period), Chapter 480 (four years), and the common law.

7. Even if Plaintiffs sought certification under Rule 23(b)(1)(A), the Court would not be inclined to certify either the Class, sub-class I or sub-class II under this sub-section. Sub-section (1)(A) provides that an action is maintainable as a class action if prosecution of separate actions would create a risk of inconsistent or varying adjudications, thus establishing incompatible standards of conduct for the party opposing the class. Fed. R.Civ.P. 23(b)(1)(A). "The phrase 'incompatible standards of conduct' refers to the situation where 'different results in separate actions would impair the opposing party's ability to pursue a uniform continuing course of conduct.'" *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1193, *amended by*, 273 F.3d 1266 (9th Cir.2001). This sub-section is designed to protect the interests of the party opposing the class and to "obvi-

ate the actual or virtual dilemma" created by incompatible adjudications in that compliance with one judgment would violate the terms of another. *See* Fed.R.Civ.P. 23(b) advisory committee's note; *Joseph L. v. Office of Judicial Support*, 516 F.Supp. 1345, 1350 (E.D.Pa.1981). While actions for declaratory relief are typical of class actions under this section because the terms of the relief usually "fix the rights and duties owed by the defendants to others," the Court does not see that the rationale and considerations of this sub-section are applicable here. In the instant case, although declaratory relief is sought, different results in separate actions would not impair the City's ability to pursue uniform conduct. The ordinance is either valid or not. One plaintiff's success in the face of another's failure will not force the City to abandon and enforce the ordinance at the same time. Moreover, the Ninth Circuit has repeatedly questioned, if not expressly prohibited, certification under Rule 23(b)(1)(A) in actions for money damages. *See Zinser*, 253 F.3d at 1193; *Green v. Occidental Petroleum Corp.*, 541 F.2d 1335, 1340 (9th Cir.1976); *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 466 (9th Cir.1973).

discussed. Defendants, while generally opposing certification, do not raise specific objections with respect to any particular subsection of Rule 23(b). The Court notes that Plaintiffs, in addition to seeking injunctive [8] and declaratory [9] relief, also pursue compensatory [10] and punitive damages [11] under Section 1983, treble damages under Chapter 480,[12] common law remedy,[13] disgorgement of benefits [14] and imposition of a constructive trust.[15]

### A. Rule 23(b)(1)(B)

■ A class action is appropriate under rule 23(b)(1)(B) when multiple suits would create a risk of adjudications which would be dispositive of the interests of other members or would substantially impair or impede their ability to protect their interests. Fed. R.Civ.P. 23(b)(1)(B). This risk is present when "an individual action inescapably will alter the substance of the rights of others having similar claims." *Green,* 541 F.2d at 1340 n. 10. Similar to sub-section (1)(A)'s protection of the party opposing the class, sub-section (1)(B) serves to protect the interests of those whose rights will inescapably be altered by the outcome of the lawsuit. *See* Fed.R.Civ.P. 23(b)(1)(B) advisory committee's notes (class action with adequate representation required when lawsuit will certainly affect rights of others, an example being

actions by shareholders to force declaration of dividends). "Neither the stare decisis consequences of an individual action nor the possibility of false reliance upon the improper initiation of a class action can supply either the practical disposition of the rights of the class, or the substantial impairments of those rights, at least one of which is required by Rule 23(b)(1)(B)." *La Mar v. H & B Novelty & Loan Co.,* 489 F.2d 461, 465 (9th Cir.1973). Limited fund cases are typically certified under sub-section (1)(B). "[T]o satisfy Rule 23(b)(1)(B), a class action plaintiff must demonstrate that the case involves a 'fund' with a definitely ascertained limit, all of which would be distributed to satisfy all those with liquidated claims on a common theory of liability, by an equitable, pro rata distribution." *Zinser,* 253 F.3d at 1197 (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 841, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999)).

Plaintiffs argue that certification under this sub-section is appropriate because a ruling in their favor would stop the City from assessing the $3.00 fee, the benefit of which would inure to the class as a whole rather than to just the individual Plaintiffs. However, the Court recognizes that while individuals challenge the constitutionality of ordinances and statutes all the time, though such lawsuits invariably can be seen as affecting

---

**8.** Count XI requests "injunctive relief in the form of an order and judgment enjoining Defendants from: Collecting entrance fees from non-residents .... Expending or committing funds contained in the Fund ...." Second Am. Compl. at 20.

**9.** Count X requests an "order declaring that ROH Section 96–19 [Section 10–2.11](1) violates the First Amendment to the United States Constitution and Art. I, § 4 of the Hawaii Constitution; (2) violates Article 1, § 2 of the Hawaii Constitution, H.R.S. § 7–1 and H.R.S. Chapter 115; (3) exceeds the City's authority under the laws of the State of Hawaii, (4) violates the Privileges and Immunities Clause and the Equal Protection Clause of the United States Constitution; (5) violates the Fourth Amendment of the United States Constitution; (6) violates the International Covenant on Civil and Political Rights [abandoned]; (7) violates 42 U.S.C. § 1983; (8) constitutes an unfair or deceptive act or practice under H.R.S. § 480–2; (9) is null and void; and (1) constitutes an improper basis on which to access fees and that the fees collected from Plaintiff Daly and others similarly situated under ROH

§ 96–19 [Section 10–2.11] were wrongfully taken under federal and state law." Second Am. Compl. at 19.

**10.** Plaintiffs request damages in an amount to be proven at trial in connection with Count V (privileges and immunities), Count VI (equal protection), Count VII (fourth amendment). Additionally, Plaintiff Burgess requests damages in an amount to be proven at trial in Count I.

**11.** Plaintiffs request in Count XV imposition of punitive damages against Defendant Harris.

**12.** Count IX asserts on behalf of Plaintiff Daly and those similarly situated a claim under H.R.S. Chapter 480 which provides for treble damages.

**13.** *See* Count XII (common-law remedy).

**14.** *See* Count XIII (unjust enrichment).

**15.** *See* Count XIV (constructive trust).

the rights of others, class certification to ensure the adequate representation of each affected individual is never required. Moreover, class-wide accrual of benefits is characteristic of virtually all class action lawsuits and cannot be sufficient to warrant certification under sub-section (b)(1)(B). Plaintiffs do not argue, nor does the Court deem likely, that the Defendants have but a "limited fund" from which to satisfy individual judgments. Nor have Plaintiffs demonstrated that the instant case resembles any of the situations discussed in the Advisory Committee Notes to Rule 23(b)(1)(B). Thus, Plaintiffs have not sufficiently established that certification under this sub-section is warranted with respect to either the Class, sub-class I or sub-class II.

### B. Rule 23(b)(2)

■ Rule 23(b)(2) provides for what the Ninth Circuit Court of Appeals has characterized as "the classic type of action envisioned by the drafters of Rule 23." *Elliott v. Weinberger,* 564 F.2d 1219, 1228–29 (9th Cir. 1977). Under this provision, class certification is appropriate when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R.Civ.P. 23. "Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." *Zinser,* 253 F.3d at 1195 (citing *Nelsen v. King County,* 895 F.2d 1248, 1254–55 (9th Cir.1990)) (further citations omitted). Although Rule 23(b)(2) certification is inappropriate where the primary relief sought is monetary, *see id.,* a class seeking monetary damages that are merely incidental to the primary claim for injunctive relief can be certified under sub-section (b)(2). *Probe v. State Teachers' Retirement System,* 780 F.2d 776, 780 (9th Cir.1986).

Plaintiffs argue that their request for injunctive relief qualifies the Class for certification under Rule 23(b)(2). However, injunctive relief is not the only relief Plaintiffs seek. Plaintiffs also assert claims for compensatory (in amounts to be proven at trial)

and punitive damages under Section 1983, and treble damages under H.R.S. Chapter 480. Plaintiffs also seek remedies under the common law, disgorgement of benefits, and imposition of a constructive trust. In light of this, the Court is wary to characterize the damages aspect of the instant lawsuit as incidental to the claim for injunctive relief. *See Besinga v. United States,* 923 F.2d 133, 135 (9th Cir.1991) ("Where individual damages sought, generally a class action must be certified under 23(b)(3)."); *Zinser,* 253 F.3d at 1196 (finding certification under 23(b)(2) inappropriate where complaint sought establishment of reserve fund for past and future damages, compensation for future medical treatment, and other compensatory and punitive damages). Had Plaintiffs sought to recoup merely $3.00 each and/or requested declaratory and injunctive relief only, the Court would be inclined to find that injunctive relief was primary to the monetary damage aspect of the lawsuit. *Cf. Irwin v. Mascott,* 96 F.Supp.2d 968, 979 (N.D.Cal.1999) (statutory damages in the amount of $0.52 not predominate). However, this is clearly not so, especially with respect to the members of class-II who seek to recover damages for having lost the opportunity of enjoying the beach. Thus, the Court finds that Plaintiffs have not established that certification of the Class, sub-class I or sub-class II is appropriate under sub-section (b)(2).

### C. Rule 23(b)(3)

Plaintiffs assert that certification is appropriate under sub-section (b)(3) because: (1) the Class is "seeking to remedy a common legal grievance," (2) class action treatment is a superior method that will conserve the resources of both the court and parties, and (3) Hawaii is the preferred forum. Mot. Cert. at 14. Defendants do not raise specific objections.

Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served best settling their differences in a single action." *Hanlon,* 150 F.3d at 1022 (internal quotation marks omitted). Pursuant to Rule 23(b)(3), a class can only be certified if "questions of law or fact common to the members of the class predom-

inate over any questions affecting only individual members" and class resolution is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). The presence of Rule 23(b)(2) commonality is insufficient to warrant certification under Rule 23(b)(3). *Hanlon*, 150 F.3d at 1022. "In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between common and individual issues." *Id.* Rule 23(b)(3) provides that the following factors are pertinent: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action." Fed.R.Civ.P. 23(b)(3).

### 1. Predominance

■ It is apparent to the Court that the claims asserted by the Class, sub-class I and sub-class II involve resolution of common issues of law such as: whether the challenged ordinance contravenes the United States and Hawaii Constitutions and/or Hawaii statutory law. However, issues that require individual resolution also exist. For example, as currently defined the Class includes members of sub-class II who, like Plaintiff Burgess, did not pay the $3.00 fee. These members of the Class (sub-class II) assert a claim (First Amendment) not relied upon by other Class members.[16] Establishing liability and proving damages with respect to this claim will vary from person to person. One beach-goer may have sought entry to leaflet or participate in a protest; another, like Plaintiff Burgess, may have desired to communicate and associate with family members; others likely desired to enter simply to enjoy the recreational activities.[17]

Clearly, Defendants' liability for deprivation of the plaintiff's First Amendment rights will turn on the factual circumstances of each Class member. Also, should liability be established on any basis, damage calculation for those members who suffered the missed opportunity of enjoying the beach at Hanauma Bay will require individual determination. It is apparent to the Court that the worth of such a missed opportunity would vary significantly from person to person and that to establish damages, Class members would be required to provide proof of such loss. The disparate factual and legal issues associated with sub-class II member's First Amendment claim and damages not only undermine the cohesiveness of the sub-class, but also undermines the cohesiveness of the overarching Class. *See Hanlon*, 150 F.3d at 1022 ("The Rule 23(b) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.").

■ Such problems do not arise with respect to sub-class I. The Court anticipates that damages will be relatively modest and uniform. Additionally, it does not appear that establishment of liability with respect to sub-class I claims will turn on the factual circumstances of each individual member.

### 2. Superiority

Assessment of the superiority of proceeding as a class action involves consideration of the factors set forth in Rule 23(b)(3)(A)–(D). *See Zinser*, 253 F.3d at 1190. "A consideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Id.* (citation omitted).

■ Rule 23(b)(3)(A) inquires into each member's interest in "individually controlling

---

**16.** Although Plaintiffs requested certification of an overarching Class, it is evident to the Court that members of the Class belong to *either* sub-class I *or* sub-class II. Those "who were required to pay $3.00" either: (1) paid and went in (sub-class I) or (2) did not pay and did not enter (sub-class II).

**17.** In this sense, Plaintiff Daly and Burgess do not adequately represent Class members who sought to engage in quintessential First Amendment activities (such as holding a political rally) at Hanauma Bay.

the prosecution" of separate actions. *See* Fed.R.Civ.P. 23(b)(3)(A). Members of the Class and sub-class II with relatively strong cases for establishing liability based on their First Amendment claim, or who suffered extraordinary loss as the result of having lost the opportunity to enjoy the beach, may have an interest in controlling the prosecution of their own cases to better ensure establishment of liability and maximization of damages. Members of sub-class I, however, having suffered relatively modest and uniform damages do not have a particular interest in controlling the prosecution of their case, and likely would prefer to litigate as a class rather than bear the expense of maintaining an individual action. *See Zinser*, 253 F.3d at 1190 ("Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action."); *Hanlon*, 150 F.3d at 1023 (uneconomic for plaintiffs to maintain individual suits where "litigation costs would dwarf potential recovery").

The second factor is "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class." Fed.R.Civ.P. 23(b)(3)(B). Plaintiffs represent that no related cases are currently pending. The Court has no knowledge to the contrary.

Factor three inquires into the desirability or undesirability of concentrating the litigation of the claims in the particular forum. Fed.R.Civ.P. 23(b)(3)(C). Although the members of the Class and sub-class are undoubtedly located nationwide, the Defendants, Hanauma Bay itself, and most potential witnesses are here in Hawaii. Litigation in this Court seems the most logical choice.

The fourth and final factor involves assessment of the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3)(D). Where "the difficulties of maintaining a class action treatment outweigh the benefits of considering common issues in one trial, class action treatment is not the 'superior' method of adjudication." *Valentino*, 97 F.3d at 1234–35. Throughout the foregoing discussion, the Court has identified numerous problems with maintenance of the Class and sub-class II. Resolution of liability and damage issues with respect to members of these classes, who like Plaintiff Burgess allege having suffered missed opportunity-type injury and rely on a First Amendment based theory of liability, will require the Court to conduct individualized and time-consuming inquiries. *See Zinser*, 253 F.3d at 1192 ("If each class member has to litigate numerous and substantial separate issues to establish his or her right to recovery individually, a class action is not 'superior.'"). As discussed, these problems do not exist with respect to sub-class I. While the Court anticipates that providing adequate notice under Rule 23(c)(2) [18] may present difficulty, management of sub-class I otherwise appears feasible.

■ Accordingly, the Court finds that sub-class II is not sufficiently cohesive. Resolution of the claims of sub-class II members will invariably require individualized liability and damage determinations. Likewise, the inclusion of sub-class II members who assert First Amendment claims and allege lost opportunity-type damages undermines the cohesiveness of the overarching Class. Thus, certification of the Class is also inappropriate under Rule 23(b)(3). Sub-class I, however, at least for the time being, fits squarely within this category.

### CONCLUSION

Based on the foregoing, the Court GRANTS in part and DENIES in part Plain-

---

18. F.R.C.P. Rule 23(c)(2) provides:

In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude the member from the class if the member so requests by a specified date; (B) the

members who do not request exclusion; and (C) any member who does not request exclusion may, if the member desires, enter an appearance through counsel.

Fed.R.Civ.P. 23(c)(2). The Court notes that the class action plaintiff generally bears the expense of providing notice to the class. *See Barahona–Gomez v. Reno*, 167 F.3d 1228, 1236 (9th Cir. 1999) (citing *Eisen*, 417 U.S. at 178–79, 94 S.Ct. 2140).

tiffs' Motion for Class Certification. The Court DENIES Plaintiffs' request for certification of the Class and sub-class II. Pursuant to F.R.C.P. Rule 23(c)(1), the Court conditionally certifies sub-class I, defined as (1) non-residents of Hawaii (2) who paid $3.00 to enter the beach area of Hanauma Bay (3) after July 10, 1999(4) who at the time of payment were U.S. citizens, as a Rule 23(b)(3) class.[19] Sub-class I is certified as to liability and damages with respect to Counts II, III, IV, V, VI, VII, IX, X, XI, XII, XIII, XIV, and XV.[20] Plaintiff Burgess may proceed individually with her claims if she so chooses, see *Probe*, 780 F.2d at 780 (F.R.C.P. permits action involving both class and individual claims), subject to further motion. Should it become evident that the current definition of sub-class I is under- or over-inclusive, the Court will consider redefinition of sub-class I or creation of an additional sub-class upon a timely motion by either party.

IT IS SO ORDERED.

### ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION AND REVISING CERTIFICATION ORDER DATED APRIL 25, 2002

#### BACKGROUND

On April 25, 2002, the Court issued an Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification.[1] While the Court found that the Class,[2] sub-class I[3] and sub-class II[4] (assumedly for analytical purposes) met the requirements of Rule 23(a), it denied certification of the Class and sub-class II and conditionally certified sub-class I (with respect to Counts II, III, IV, V, VI, VII, IX, X, XI, XII, XIII, XIV and XV), defined as (1) non-residents of Hawaii (2) who paid $3.00 to enter the beach area of Hanauma Bay (3) after July 10, 1999(4) who at the time of payment were U.S. Citizens, as a 23(b)(3) class. Plaintiffs timely sought partial reconsideration of the Court's April 25, 2002 Certification Order on May 9, 2002. Defendants submitted an Opposition on May 20, 2002.

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for disposition without hearing.

#### STANDARD

In the Ninth Circuit a successful motion for reconsideration must accomplish two goals. First, a motion for reconsideration must demonstrate some reason why the Court should reconsider its prior decision. Second, the motion must set forth facts or law of a "strongly convincing" nature to induce the court to reverse its prior decision. *Decker Coal Co. v. Hartman*, 706 F.Supp. 745, 750 (D.Mont.1988) (citing *All Hawaii Tours v. Polynesian Cultural Center*, 116 F.R.D. 645, 649 (D.Haw.1987), *partially rev'd on other grounds*, 855 F.2d 860 (9th Cir. 1988)). Courts have established three grounds justifying reconsideration: (i) an intervening change in controlling law, (ii) the availability of new evidence, and (iii) the need

---

**19.** Prior to meeting with Magistrate Kobayashi on May 6, 2002, the parties should confer regarding proper notification of the members of sub-class I under Rule 23(c)(2), particularly: the contents of the notice (including the appropriateness of requiring submission of a proof of claim), the method and timing of notice dissemination, and the deadline for responses. The Court anticipates that the hearing on Defendants' eight Motions to Dismiss with Prejudice, or Alternatively for Partial Summary Judgment should be held on June 17, 2002.

**20.** Count I (First Amendment) refers only to Plaintiff Burgess and those similarly situated (sub-class II members). *See* Amend. Compl. at ¶ 38–43.

**1.** The facts of the instant dispute are outlined in detail in the Court's April 25, 2002 Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification and will not be repeated herein.

**2.** Plaintiffs' proposed Class was defined as "non-residents of Hawaii who have been required to pay $3.00 to access the public beach at Hanauma Bay." *See* Order, filed 4/25/02, at 7.

**3.** Plaintiffs' proposed sub-class I was defined as "those non-residents who have paid the $3.00 access fee." *See* Order, filed 4/25/02, at 7.

**4.** Plaintiffs' proposed sub-class II was defined as "those non-residents who have been unable or unwilling to access the beach at Hanauma Bay, despite a desire to do so, as the result of the imposition of the $3.00 access fee." *See* Order, filed 4/25/02, at 7.

to correct clear error or prevent manifest injustice. *Decker Coal,* 706 F.Supp. at 750; *All Hawaii Tours,* 116 F.R.D. at 649; Local Rule 60.1.

The Court notes that its April 25, 2002 Certification Order conditionally certified sub-class I as a Rule 23(b)(3) class pursuant to Rule 23(c)(1). By its terms, Rule 23(c)(1) gives the court discretion to alter or amend its order before decision on the merits. Fed. R.Civ.P. 23(c)(1) ("An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.").

### DISCUSSION

Through the instant Motion for Reconsideration, Plaintiffs move the Court to "conditionally certify sub-class I, re-defined as (1) non-residents of Hawaii (2) who paid $3.00 to enter the beach area of Hanauma Bay (3) who at the time of payment were U.S. citizens, as a Rule 23(b)(2) class to the extent they seek injunctive and declaratory relief; and as a Rule 23(b)(3) class to prosecute their claims for money damages." Defs' Mot. for Recons., filed 5/09/02, at 17. Plaintiffs also seek "conditional certification of sub-class II, defined as (1) non-residents of Hawaii (2) who declined to enter the beach area of Hanauma Bay because of the $3.00 fee imposed by the City and County (3) who at the time they declined entry were U.S. citizens, as a Rule 23(b)(2) class to the extent they seek injunctive and declaratory relief." *Id.* In essence, Plaintiffs take issue with the Court's exclusion of the statute of limitations (SOL)-susceptible class members from both sub-classes, certification of sub-class I as a 23(b)(3) class, and refusal to certify sub-class II. The Court will address each issue in turn.

### I. *Adequacy of Representation—Statute of Limitations*

The Court found that Plaintiffs Daly and Burgess, having visited Hanauma Bay within the past two years, did not adequately represent those members of the class susceptible to Section 1983's statute of limitations defense. *See* Order, filed 4/25/02, at 20–21. The Court was concerned (1) about the existence of a conflict of interest stemming from

the named-Plaintiffs' incentive to limit membership in the class so as to maximize individual recovery and (2) that the interests of the SOL-susceptible class members would be under-served, even if inadvertently. *See id.*

Plaintiffs contend that the Court's concerns are in one instance unwarranted, and in the other, inappropriate. With respect to the Court's first concern, Plaintiffs state that they seek to impose a constructive trust over the Hanauma Bay Fund and implement the fluid recovery system whereby funds would be distributed to individuals who present claims, the remainder to be used for the benefit of the class. *See* Plts' Mot. for Recons., filed 5/09/02, at 5–7. Plaintiffs argue that the Court's second concern is not an appropriate basis for finding representation inadequate. *See id.* at 7. Defendants contend, on the other hand, that Plaintiffs' constructive trust/fluid recovery plan not only fails to allay the Court's concerns, but actually reinforces the existence of a conflict. *See* Defs' Opp., filed 5/20/02, at 6–7.

Rule 23(a)(4)'s adequacy of representation requirement protects the due process interests of absent class members. *See* NEWBERG & CONTE, 1 NEWBERG ON CLASS ACTIONS § 3.21 (3d ed.1992); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir.1998). "The premise of a class action is that litigation by representative parties adjudicates the rights of all class members, so basic due process requires that named plaintiffs possess undivided loyalties to absent class members." *Broussard v. Meineke Discount Muffler Shops,* 155 F.3d 331, 338 (4th Cir.1998). The Ninth Circuit instructs the Court to "carefully scrutinize the adequacy of representation in all class actions," *Rutledge v. Electric Hose & Rubber Co.,* 511 F.2d 668, 673 (9th Cir.1975), and to consider the following: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) whether the named plaintiffs and counsel will vigorously prosecute the action on behalf of the class. *Hanlon,* 150 F.3d at 1020.

Notwithstanding Plaintiffs' explanation of their intentions, the Court is not satisfied that the interests of absent SOL-susceptible class members will be adequately represent-

ed. The Court agrees with Defendants that a conflict exists in that, according to Plaintiffs' constructive trust/fluid recovery system,[5] the remaining unclaimed funds are to be used for the benefit of the class. *See* Plts' Mot. for Recons., filed 5/09/02, at 5–7. While the Court recognizes that such benefit may be realized indirectly, the named-Plaintiffs still have an incentive to limit class membership. Fewer individual claims made against the general fund will yield a greater sum to be used for the benefit of class members, including the named-Plaintiffs.

Additionally, while the Court's concern that the named-Plaintiffs may inadvertently neglect or fail to anticipate issues particular to the SOL-susceptible class members may not be sufficient reason, standing alone, to find representation inadequate, it nevertheless intuitively raises red due process flags. The named-Plaintiffs have less incentive to dedicate resources to overcoming the statute of limitations defense on behalf of the absent class members given that they themselves are not in jeopardy. *See Hanlon,* 150 F.3d at 1020 (requiring the Court to inquire whether the named plaintiffs and counsel will prosecute the action vigorously on behalf of the class). Moreover, the particular circumstances of each individual SOL-susceptible class member, unknown and consequently ill-represented by the named-Plaintiffs, may be determinative of his/her ability to overcome

such defense.[6] *Cf. Broussard,* 155 F.3d at 342 (discussing equitable tolling).

Finally, it is apparent to the Court that inclusion of the SOL-susceptible class members impedes certification under Rule 23(b). Rule 23(b)(2), as Plaintiffs point out, *see* Plts' Mot. for Recons., filed 5/09/02, at 10, is premised on homogeneity and cohesiveness. *See Arnold v. United Artists Theatre Circuit, Inc.,* 158 F.R.D. 439, 451 (N.D.Cal.1994); *Allison v. Citgo Petroleum,* 151 F.3d 402, 413 (5th Cir.1998) ("the b(2) class is, by its very nature, assumed to be a homogeneous and cohesive group with few conflicting interests among its members."); *Broussard,* 155 F.3d at 338 ("The problem of actual and potential conflicts is a matter of particular concern in a case [where the district court certifies the class under a Rule 23(b) class] which does not allow class members to opt out of the class action."). As the preceding discussion demonstrates, the availability of the statute of limitations defense as to certain class members undermines both the homogeneity and cohesiveness of the proposed classes. Similarly, Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and class resolution to be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). As mentioned in the Court's April 25, 2002 Order, limiting the Class to those

---

**5.** The Court notes that it appears that the fluid recovery system, as a method of aggregating damages as opposed to a distribution method, would not be appropriate here since Section 1983 requires proof of actual damages. *See Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1305–06 (9th Cir.1990) (circumvention of individual proof of injury, as accomplished by fluid recovery, not appropriate where statute requires showing of actual damage); *Jolivet v. Deland,* 966 F.2d 573, (10th Cir.1992) (quoting *Memphis Community Sch. Dist. v. Stachura,* 477 U.S. 299, 307, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986), for the proposition that "[n]o compensatory damages may be awarded absent proof of actual injury" in Section 1983 case).

**6.** Plaintiffs indicate an intention to argue (on the SOL-susceptible class members' behalf) that Section 1983's two year statute of limitations is not a bar to recovery based on a continuing harm/violation theory. *See* Plts' Mot. for Class Certifica-

tion, filed 3/08/02, at 7. At least arguably, to establish "continuing harm" in this context, the plaintiff must not only show that the government continually enforced the ordinance, but that he/she acted diligently and vigilantly in pursing his/her remedies against the ordinance. *See Jordan v. Rocco,* 648 F.Supp. 942, 946 (N.D.Ohio 1986); *see also Cowell v. Palmer Township,* 263 F.3d 286, 295 (3d Cir.2001) (citing *Nat'l Adver. Co. v. City of Raleigh,* 947 F.2d 1158, 1168 (4th Cir. 1991), and *Ocean Acres Ltd. v. Dare County Bd. of Health,* 707 F.2d 103, 107 (4th Cir.1983), for the proposition that the continuing violations doctrine should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims). The Court finds it highly unlikely that the named-Plaintiffs can adequately represent the SOL-susceptible class membership without knowing, or at least being able to anticipate, whether and in what way each member acted diligently and vigilantly.

who visited Hanauma Bay within the past two years preserves Rule 23(b)(3) predominance and superiority; failure to do so would create administrative problems in determining who would be entitled to pursue relief under Section 1983 (two year limitations period), Chapter 480 (four years) and the common law [arguably 6 years [7]]. *See* Order, filed 4/25/02, at 22 n. 6.

The apparent conflict of interest, due process and Rule 23(b) considerations counsel against inclusion of individuals who visited Hanauma Bay prior to July 10, 1999. Accordingly, the Court finds that reversal of its decision to exclude the SOL-susceptible members is not warranted.

## II. *Rule 23(b) Certification*

### A. Sub-class I

■ Plaintiffs argue in favor of divided certification; specifically that sub-class I be certified as a Rule 23(b)(2) class to the extent they seek injunctive and declaratory relief; and as a Rule 23(b)(3) class to prosecute their money damages claim. *See* Plts' Mot. for Recons., filed 5/09/02, at 17. Defendants contend that Rule 23(b)(2) certification is inappropriate because "Plaintiffs seek monetary damages that are not 'merely incidental'

to their claims for injunctive relief." Defs' Opp., filed 5/20/02, at 10. Plaintiffs contend that certification of their injunctive and declaratory claims under Rule 23(b)(2) is not precluded by their other claims for money damages.

The Court stated in its April 25, 2002 Order that Plaintiffs' claims for compensatory (in amounts to be proven at trial) and punitive damages as well as other equitable remedies made it difficult to characterize the damages aspect of the instant lawsuit as incidental to the claim for injunctive relief. *See* Order, filed 4/25/02, at 28. Moreover, the Court indicated that if the Plaintiffs sought to recoup merely $3.00 each and/or declaratory and injunctive relief only, it would be inclined to find that the money aspect of the case was ancillary to the claims for injunctive and declaratory relief. Based on Plaintiffs' representation that Plaintiff Daly's sub-class seeks no consequential damages other than a refund of the $3.00 entry fee assessed,[8] *see* Plts' Mot. for Recons., filed 5/09/02, at 13–14, the Court now finds that certification of sub-class I (with respect to both injunctive/declaratory and monetary relief) under Rule 23(b)(2) [9] is appropriate based on the information currently before it.[10]

---

7. Plaintiffs argue that a six year statute of limitation applies to their unauthorized taxation and constructive trust claims. *See* Plts' Mot. for Recons., filed 5/09/02, at 5. Defendants do not concede this point. *See* Defs' Opp., filed 5/20/02, at 6 n. 2.

8. Plaintiffs' make the following representation: "The relative importance of the injunctive relief sought is underscored when compared to the modest damages of the individual claimants. Those who paid to enter Hanauma will seek to recover the $3.00 charge (or at most three times that amount under HRS chapter 480) from the City and County. Carol Daly does not allege that she suffered any consequential damages as a result of the improper charge." Plts' Mot. for Recons., filed 5/09/02, at 13–14.

9. Insofar as the Court makes this finding sua sponte, it has discretion to do so pursuant to Rule 23(c)(1). *See O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 342 n. 49 (C.D.Cal.1998) ("As the court has noted throughout this Order, as the evidentiary record develops and dispositive motions are filed, the court may sua sponte alter, amend, or vacate this certification Order at any time before a decision on the merits is

made."); *In re N. Dist. of Cal. "Dalkon Shield" IUD Products Liability Litigation*, 521 F.Supp. 1188, 1192 (N.D.Cal.1981), *rev'd on other grounds*, 693 F.2d 547 (5th Cir.1982) ("Many of the trial court's responsibilities in maintaining a class action may be exercised even though no party to the lawsuit requests such action."); *Barefield v. Chevron, USA, Inc.*, No. C 86–2427, 1988 WL 188433 *2 (N.D.Cal. Dec. 6, 1988) (citing F.R.C.P. 23(c)(1) and *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 633 (9th Cir. 1982), for the proposition that certification orders, including an order certifying a Rule 23(b)(2) class, are "inherently tentative in nature and may be modified as circumstances require"); *cf. United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 408, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) (concluding that court has no sua sponte *obligation* to certify subclasses). The Court notes that many of the cases cited by Plaintiffs in support of their divided certification argument manifest the propriety of certifying all sub-class I proceedings under Rule 23(b)(2).

10. When Plaintiffs sue for both monetary damages and equitable relief, as in the instant case, it appears the Court has three options with respect to certification under Rule 23(b): (1) certify the

While the Ninth Circuit permits certification under Rule 23(b)(2) when money damages are incidental to injunctive and declaratory relief, *see Williams v. Owens–Illinois, Inc.*, 665 F.2d 918, 928–29 (9th Cir.1982) (citations omitted), it has not defined "incidental" or elaborated on what makes a particular form of relief "predominant."[11] The Fifth Circuit in *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir.1998), addressed this precise issue. After thoughtful analysis of the different Rule 23(b) categories and the rationale of Rule 23(b)(2), the *Allison* Court reasoned that "incidental" damages are those "that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief," that are "capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances," and that "do not require additional hearings to resolve the disparate merits of each individual's case." *Id.* at 415. Restricting certification to those classes seeking "incidental" (as defined in *Allison*) money damages ensures that such damages do not splinter the homogeneity of the class. *See Lemon*, 216 F.3d at 580 ("A suit for money damages, even if the plaintiffs seek uniform, class-wide equitable relief as well, jeopardizes the presumption of cohesion and homogeneity because individual claims for compensatory or punitive damages typically require judicial inquiry into the particular-

ized merits of each individual plaintiff's claim."). Homogeneity, the hallmark of Rule 23(b)(2), must necessarily be preserved in order to dispense with notice and giving class members the opportunity to opt out before judgment on the merits. *See Arnold*, 158 F.R.D. at 451 (citing *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 250 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975)) (further citations omitted), *Barefield*, 1988 WL 188433 at *3, *Allison*, 151 F.3d at 413.

The Court finds that the money damages sought by Plaintiffs—$3.00 (potentially trebled) and punitive damages—are incidental to their request for injunctive and declaratory relief. First, all sub-class I members will be entitled to: $3.00 if successful under Section 1983 (Counts V, VI, and VII), $9.00 if liability is established under H.R.S. Chapter 480 (Count IX), and punitive damages if successful on Count XV. Thus, liability flows to the class as a whole as a result of liability on claims that form the basis of both declaratory and injunctive relief. Second, as Plaintiffs represent that they seek no consequential damages in addition to refund of the $3.00 assessed for entry, calculating each member of sub-class I's damages is "not dependent in any significant way on the intangible, subjective differences of each class member's circumstances" and will not "require additional hearings to resolve the disparate merits of each individual's case." Third, sub-class I's

class under Rule 23(b)(3) for all proceedings, (2) certify the class for purposes of pursuing equitable relief pursuant to Rule 23(b)(2) and pursuant to 23(b)(3) for monetary damages ("divided certification" or "hybrid certification"), or (3) certify all proceedings under Rule 23(b)(2) with discretionary notice and opt out pursuant to Rules 23(d)(2) and 23(d)(5). *See Lemon v. Int'l Union of Operating Engineers*, 216 F.3d 577, 581–82 (7th Cir.2000). Notably, under option 2 (divided certification), it is likely that the damages claims would need to be adjudicated first to preserve the parties' right to a jury trial. *See id.* (citing *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 898 (7th Cir.1999)). The Court finds that Option 3 is most appropriate here.

**11.** The District Court for the Western District of Washington, citing *Robinson v. Metro–North*

*Commuter R.R. Co.*, 267 F.3d 147 (2d Cir.2001), inquired "whether, in light of all the evidence ... received and the arguments advanced, the plaintiffs would have brought suit to obtain injunctive relief which they seek even if they could not obtain a monetary recovery" to determine if injunctive relief was "predominant" in its Rule 23(b)(2) analysis. *Beck v. Boeing Co.*, 203 F.R.D. 459, 466 (W.D.Wash.2001). Under this test and based on Plaintiffs' representations, *see* Plts' Mot. for Recons., filed 5/20/02, at 14 (given the small damages claim, "it is likely that Daly would pursue her claim for injunctive relief even if compensatory damages were not available"), the Court agrees with Plaintiffs that injunctive relief is predominant. While the Court does not adopt *Allison* or imply that the Ninth Circuit will, because *Allison* appears to be stricter than the *Robinson* test utilized by the Seattle District Court, caution counsels in favor of careful consideration of the requirements imposed by *Allison*.

punitive and treble damage claims do not render the monetary component predominant in this case. *See Barefield,* 1988 WL 188433 at *3 (punitive damages does not preclude certification under Rule 23(b)(2)); *In re NASDAQ Market–Makers Antitrust Litigation,* 169 F.R.D. 493 (S.D.N.Y.1996) (pursuit of antitrust treble damages insufficient to defeat class certification under Rule 23(b)(2)). If punitive damages are assessed against Defendant Harris,[12] it is apparent to the Court that all members of sub-class I will be entitled to an award uniform in amount. *See Barefield,* 1988 WL 188433 *3 (class claim for punitive damage does not detract from homogeneity or cohesiveness of the class because it hinges on defendant's conduct to the class as a whole); *Beck v. Boeing Co.,* 203 F.R.D. 459, 466 (W.D.Wash.2001) ("Liability will hinge on that proof and the punitive damages assessed against defendants (if any) will flow from that finding. There is nothing about plaintiffs' request for punitive damages which disqualifies their case from certification under 23(b)(2)."). Similarly, computation of treble damages, if appropriate, will involve formulaic calculation as opposed to individual hearings and damage determinations. Thus, the Court finds that sub-class I's claims for money damages (limited to $3.00 in compensatory damages, treble and punitive damages) are incidental to their request for injunctive relief. Consequently, sub-class I meets the requirements of Rule 23(b)(2).

Additionally, the Court finds certification of sub-class I under 23(b)(2) not only permissible, but superior to divided certification and certification under 23(b)(3). *See* discussion *supra* n. 10. Although Plaintiffs' argue for divided certification, before such certification is appropriate, "there must be some reason to believe that the assumption of cohesiveness underlying a subsection (b)(2) class action does not apply to the individual claims for monetary damages." *Thomas v. Albright,* 139 F.3d 227, 235–36 (D.C.Cir.1998). In light of Plaintiffs' clarification of the dam-

ages they seek, the Court finds that sub-class I fits squarely within the 23(b)(2) paradigm. Certification of sub-class I's damage claims under 23(b)(3) is not necessary because, as discussed above, they do not diminish the cohesiveness of the class. With respect to 23(b)(3), "[w]here an action would qualify under either (b)(2) or (b)(3), the courts favor certification under the former because, by compelling inclusion, such actions promote 'judicial economy, consistency of result, and binding adjudication more effectively than 23(b)(3).' " *Arnold v. United Artists Theatre Circuit, Inc.,* 158 F.R.D. 439, 451 (N.D.Cal. 1994) (citing *Robinson v. Union Carbide Corp.,* 544 F.2d 1258, 1260 (5th Cir.), *cert. denied,* 434 U.S. 822, 98 S.Ct. 65, 54 L.Ed.2d 78 (1977)) (further citations omitted); NEWBERG & CONTE, 1 NEWBERG ON CLASS ACTIONS § 4.20 (3d ed.1993) (uniform endorsement by cases and commentators of proposition that when requirements met, certification under (b)(1) and/or (b)(2) is preferable to (b)(3)); *but see Jefferson v. Ingersoll Int'l Inc.,* 195 F.3d 894, 899 (7th Cir.1999) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999), for the proposition that "class members' right to notice and an opportunity to opt out should be preserved whenever possible"). Moreover, as discussed, because the class is highly cohesive and homogenous, even with respect to the money damages sought, due process does not require that notice and the opportunity to opt out[13] be given. *See Arnold,* 158 F.R.D. at 451 (citing *Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 250 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415 (1975)) (further citations omitted), *Barefield,* 1988 WL 188433 at *3, *Allison,* 151 F.3d at 413. Upon careful consideration of the circumstances of this case, the Court finds that certification of sub-class I, with the Court retaining discretion under Rule 23(d)(2) and (d)(5) to give notice and opt out opportunities if warranted, (option 3), is most appropriate.

---

12. The Court anticipates that determination of Count XV (Punitive Damages) will not require "judicial inquiry into the particularized merits of each individual plaintiff's claim." *See Lemon,* 216 F.3d at 580 (commenting on typical aspect of compensatory and punitive damages).

13. Given the small damage amount sought, it is unlikely that potential sub-class I members would prefer to prosecute the action independently.

### B. Sub-class II

Plaintiffs request that the Court certify sub-class II under Rule 23(b)(2) for purposes of prosecuting their claims for injunctive and declaratory relief. Defendants oppose certification on grounds that monetary relief predominates and that sub-class II fails to meet the numerosity requirement of Rule 23(a), thereby rendering certification under any 23(b) category impermissible.

The Court finds that certification of sub-class II under Rule 23(b)(2), even for purposes of pursuing injunctive and declaratory relief only, is inappropriate. As the Court acknowledged in its April 25, 2002 Order, establishing liability with respect to sub-class II's First Amendment claim (Count I) would vary from person to person as "[o]ne beach-goer may have sought entry to leaflet or participate in a protest; another, like Plaintiff Burgess, may have desired to communicate and associate with family members; [and] others likely desired to enter simply to enjoy the recreational activities." *See* Order, filed 4/25/02, at 31. This demonstrates, that even with respect to injunctive and declaratory relief, in which Plaintiffs request the Court to declare that the challenged ordinance "violates the First Amendment to the United States Constitution . . ." and to enjoin the Defendants from enforcement of the ordinance on this basis, sub-class II lacks the requisite cohesiveness and homogeneity fundamental to Rule 23(b)(2) classes. *See* discussion *supra* Section I. Binding absent sub-class II members, especially without providing notice and the opportunity to opt out, is wholly inappropriate given sub-class II's First Amendment claim. Alternatively, the Court finds that sub-class II fails to meet Rule 23(a)(1) numerosity, insofar as it requires Plaintiffs to demonstrate the existence of a class. *See* Order, filed 4/25/02, at 11–12.

### *CONCLUSION*

For the foregoing reasons, the Court DENIES Plaintiffs Motion for Reconsideration. Inclusion of individuals who visited Hanauma Bay prior to July 10, 1999, divided certification with respect to sub-class I, and certification of sub-class II under Rule 23(b)(2) for purposes of pursuing injunctive and declaratory relief is not warranted. The Court revises its April 25, 2002 Order conditionally certifying sub-class I under Rule 23(b)(3). Based on the information currently before the Court, and in accordance with Rule 23(c)(1), sub-class I, defined as (1) non-residents of Hawaii (2) who paid $3.00 to enter the beach area of Hanauma Bay (3) after July 10, 1999(4) who at the time of payment were U.S. citizens, will be certified as a Rule 23(b)(2) class with respect to Counts II, III, IV, V, VI, VII, IX, X, XI, XII, XIII, XIV, and XV. As stated in the April 25, 2002 Order, Plaintiff Burgess may proceed individually with her claims if she so chooses, subject to further motion. The Court notes that Rule 23(d)(2) and (d)(5) provide it with discretion to order sub-class I members be given notice and/or the opportunity to opt out; such measures will be ordered taken if and when circumstances deem it appropriate.

IT IS SO ORDERED.